## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

NEELU PAL,
     *Plaintiff*,

    v.

MARK CANEPARI, et al.,
     *Defendants*.

No. 3:20cv13 (MPS)

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

Neelu Pal has sued Wilton police officers Mark Canepari, Arnault Baker, Brandon Harris, and Anna Tornello; Chief of Police John Lynch; the Town of Wilton; EMTs Joseph Bryson, Drew Kennedy, and Harry Downs; Wilton Volunteer Ambulance; Norwalk Hospital; and Nuvance Health, Inc.  ECF No. 199.  She claims that in retaliation for her having filed an earlier lawsuit against other Wilton police officers and EMTs, the Defendants violated her constitutional rights by illegally entering her home, using excessive force, unlawfully imprisoning her, assaulting her, and forcibly transporting her to the hospital.  She also alleges a host of state law claims.  The complaint asserts the following claims: deprivation of civil rights under 42 U.S.C. § 1983 (count 1); First Amendment retaliation (count 2); excessive force (count 3); unlawful search and seizure (count 4); malicious prosecution and abuse of process (count 5); municipal liability (count 6); conspiracy to violate civil rights (count 7); assault and battery (count 8); negligent infliction of emotional distress (count 9); intentional infliction of emotional distress (count 10); defamation (counts 11-13); and negligence (count 14). [1]  *Id.*  Wilton Volunteer Ambulance, Bryson, Kennedy,

---

[1] The operative complaint, which spans 76 pages, does not differentiate among the Defendants.  Rather, the title of each count is addressed to all Defendants, except for the *Monell* claim in count 6, and each count incorporates all preceding factual allegations. (The title of the negligence claim in Count 14 also names all defendants, but the body of that count refers only to the Town, Norwalk Hospital, and Nuvance Health.)

Downs, and Norwalk Hospital (hereinafter "the Ambulance Defendants" ) have moved for summary judgment.  ECF Nos. 281, 282.[2]

I assume familiarity with (1) the allegations of the operative complaint (ECF No. 199), (2) my ruling on the Wilton Police Defendants' motion for summary judgment, also issued today, ECF No. 357, and (3) the parties' submissions (ECF Nos. 276-282, 319, 320, 322, 323, 325-334, 336, 341, 347-48, 350, 351-53).  I adopt the facts that are set forth in my ruling on the Wilton Police Defendants' motion for summary judgment.  Additional facts are set forth as necessary.  The motions for summary judgment are GRANTED IN PART and DENIED IN PART as follows:

1.      Count 1: § 1983.  For the reasons stated in my ruling on the Wilton Police Defendants' motion for summary judgment, Count 1 is dismissed.

2.      Count 2: First Amendment Retaliation.[3]  As indicated, the Plaintiff alleges that the events of May 5, 2018 occurred because she filed an earlier lawsuit against other Wilton police officers and other EMTs.  In support of her retaliation claim as to the Ambulance Defendants, she points to her testimony that after she informed the EMT Defendants in this case that she had previously made complaints about being sexually assaulted, Kennedy said to her "words to the effect, 'We know. That's why we're here.'"[4]  ECF No. 322 at 16; ECF No. 325-1, Pal's Aff. ¶ 96.

---

[2] Confusingly, EMTs Bryson, Kennedy, and Downs are represented by two different sets of attorneys, Attorney Mullins and Attorneys Carreira and Hill.  It appears that when the Plaintiff's two cases - in which these defendants were both named - were consolidated, they continued to be represented by the attorney(s) who represented them in the original case.  Their briefs do not differ meaningfully and the Plaintiff has filed the same opposition in response to each.  ECF Nos. 322, 323.

[3] "To prevail in an action under 42 U.S.C. § 1983, a plaintiff must show both that the defendant deprived him of a federal right and that, in doing so, the defendant acted 'under color of state law.' In essence, a plaintiff must prove that the alleged deprivation is 'fairly attributable' to the state." *Palmer v. Garuti,* No. 3:06cv795(RNC), 2009 WL 413129, at *3 (D. Conn. Feb. 17, 2009)(citations omitted).  The Ambulance Defendants do not argue that they are not state actors. Rather, they maintain that they are entitled to qualified immunity but do not offer any Second Circuit authority in support.  ECF No. 281-1 at 13-14; ECF No. 282-1 at 12-13. *See Palmer,* 2009 WL 413129, at *3, 6 (finding that while ambulance defendants acted under color of state law because they were compelled by a contract with the Town to follow the police's instructions, they were not entitled to qualified immunity because they were private defendants).

[4] The Plaintiff does not cite to any audio evidence in support of this remark.

To establish a First Amendment retaliation claim, a plaintiff must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Rodriguez v. Gusman*, 2023 WL 219203, at *2 (2d Cir. Jan. 18, 2023) (quoting *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015)). If a plaintiff establishes these elements, a defendant may still avoid liability by establishing that he "would have taken the adverse action even in the absence of the protected conduct." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (internal quotation marks and citation omitted).

The "adverse action" the Plaintiff appears to allege regarding the Ambulance Defendants is that she was unlawfully placed in the ambulance, restrained, and taken to the hospital. (The EMTs were not on site at the time she claims that the police defendants illegally entered her property, used excessive force, and locked her in the back of the police car). Even assuming that this constituted an adverse action, Kennedy's alleged remark "[w]e know" and "[t]hat is why we are here" falls short of creating a triable issue on causation. The body worn camera footage shows that the EMTs were summoned to Pal's home by the police after they had already handcuffed her, placed her in the back of the police car, and witnessed her screaming for about forty minutes. When the EMTs arrived, the police provided the EMTs with their version of these events, including telling them that the Plaintiff was intoxicated, belligerent, and hostile, and made clear that she was to be placed in the ambulance and brought to the hospital in accordance with a commitment order issued under Conn. Gen. Stat. § 17a-503. In addition, the footage shows that the police moved her from the car to the ambulance stretcher, helped the EMTs restrain her on the stretcher, and remained on site and, for the most part, inside the ambulance while it waited to depart and during

the ride to the hospital.[5]  No reasonable juror reviewing the video and audio footage could find that the EMTs arrived at the scene, helped the police secure the Plaintiff to the stretcher, attempted to take her vital signs, or drove her to the hospital to retaliate against her for filing an earlier lawsuit against their co-workers.  So even if the EMTs were aware of the earlier lawsuit, the Plaintiff has failed to raise a genuine dispute of material fact on the causation element.

3.     Count 3:  Excessive Force.  The Plaintiff alleges that Bryson and Kennedy "applied extremely tight restraints on [her] wrists."[6]  ECF No. 199 ¶ 113; ECF No. 322 at 17.  She further alleges that the EMTs "refused to loosen" the restraints.   ECF No. 199 ¶ 146.

The Fourth Amendment is implicated when an officer uses "excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen."  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  With regard to excessive force claims based on the application of excessively tight handcuffs, the Second Circuit has stated as follows:

> [A] plaintiff asserting a claim for excessive force need not always establish that she alerted an officer to the fact that her handcuffs were too tight or causing pain. The question is more broadly whether an officer reasonably should have known during handcuffing that his use of force was excessive. A plaintiff satisfies this requirement if either the unreasonableness of the force used was apparent under the circumstances, or the plaintiff signaled her distress, verbally or otherwise, such that a reasonable officer would have been aware of her pain, or both.

*Cugini v. City of New York*, 941 F.3d 604, 613 (2d Cir. 2019).  As with all aspects of a Fourth

---

[5] Further, the commitment statute makes clear that the Plaintiff remained in the custody of the police, not the ambulance defendants, throughout her time in the ambulance, and that it was up to the police, not the ambulance defendants, to decide whether she should be taken to a hospital.  Conn. Gen. Stat. § 17a-503(a)("*Any police officer who has reasonable cause to believe that a person has psychiatric disabilities and is dangerous to himself or herself or others or gravely disabled, and in need of immediate care and treatment, may take such person into custody and take or cause such person to be taken to a general hospital for emergency examination* under this section. The officer shall execute a written request for emergency examination detailing the circumstances under which the person was taken into custody, and such request shall be left with the facility. The person shall be examined within twenty-four hours and shall not be held for more than seventy-two hours unless committed under section 17a-502." (emphases added)).

[6] The complaint does not allege that Downs had any role in placing her in restraints.  And the video footage demonstrates that he arrived on the scene after she was in restraints and that, during his time in the ambulance, she made no request for the restraints to be loosened.  Because of his lack of personal involvement, summary judgment is granted as to Downs as to this claim.

Amendment inquiry, an officer's awareness is "judged from the perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 396.  Again, I assume for purposes of this discussion that the Ambulance Defendants were state actors subject to a Fourth Amendment excessive force claim, *see* note 3, *supra*, and that the standard quoted above from *Cugini* applies to the Plaintiff's claim that the restraints on her stretcher were applied too tightly.

This claim is resolved by a review of the relevant body worn camera footage.  The record reveals that Tornello entered the ambulance just before 9 pm.  Tornello BWC 20:54:18.  The Plaintiff was calm and conversational once Tornello was present.  They chatted and the Plaintiff told Tornello, repeatedly and in detail, about her previous encounter in 2015 and her lawsuit.  After a while, Tornello asked her how she was feeling.  The Plaintiff responded that her hands hurt because she had been in handcuffs behind her back for too long.  Tornello BWC 21:05:10-19.  At one point, the Plaintiff commented, "What is the emergency? I'm sitting here talking to you." Tornello BWC 21:09:53.  When Tornello asked her what happened before she arrived, the Plaintiff said she didn't know, she was making dinner and she thought maybe her kids dialed 911.  About 10 minutes after Tornello entered the ambulance, the Plaintiff asked, in a conversational tone, if Tornello could loosen the restraints, which she did.  Tornello BWC 21:11:25-14:58.  The Plaintiff mentioned an "abrasion" on her right hand.  Tornello BWC 21:11:25.  That was the only instance in which Plaintiff mentioned that the restraints were too tight.  While Tornello was attempting to adjust the restraints, the Plaintiff commented that it really should be the EMT doing it.  Tornello BWC 21:12:33 ("This is what this guy should be doing.")  She also told Tornello that she would like her to stay with her in the hospital.  Tornello BWC 21:12:45.  Tornello asked the Plaintiff, "Is it better?" (referring to the adjusted restraints) to which the Plaintiff responded "No" and said that there is an "abrasion."  Tornello BWC 20:13:03-11.  She then resumed the discussion about having

Tornello stay with her at the hospital and was calm and quiet until the ambulance arrived at the hospital. Tornello BWC 21:19:20. On this record, no reasonable juror could find that the Ambulance Defendants knew or should have known that the restraints were too tight, were causing significant injury to the Plaintiff, or otherwise constituted excessive force.

    4. Count 4: Unlawful Search and Seizure.

*Unlawful Entry and False Arrest*

The events forming the basis of these claims occurred before the EMTs arrived at the Plaintiff's house. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show ... the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Summary judgment is granted as to the Plaintiff's claims of unlawful entry and false arrest because there are no factual allegations as to the personal involvement of the Ambulance Defendants.

*False Imprisonment*

The Plaintiff also alleges that she was unconstitutionally seized and imprisoned in the ambulance. The record shows that well before the Ambulance Defendants arrived on the scene, the officers handcuffed the Plaintiff and placed her in the cruiser. I have found that the handcuffing itself did not violate her Fourth Amendment rights under the circumstances. As for her transfer to the stretcher and placement in the ambulance, the police officers instructed the EMTs that she would be moved from the cruiser to the stretcher in handcuffs and then would be placed in restraints after removal of the handcuffs. ECF No 329-2 at 3 ("Wilton PD advised [EMTs] to prepare a stretcher with restraints…. Once patient was moved into ambulance via stretcher, [EMTs] assisted PD with applying restraints to hands in order to allow PD to remove hand cuffs

to permit patient care.") The audio and video footage shows that the decision to transport her to the hospital was made by the Wilton police officers, who, after making the decision, summoned the ambulance to transport her to the hospital.  As noted (see note 5, *supra*), Section 17a-503(a) imposes on the police, not the EMTs, the responsibility of determining whether a person should be committed for an emergency examination, and makes clear it is the police, not the EMTs, who take the person into custody for that purpose.  The Ambulance defendants merely conveyed the Plaintiff to the hospital at the instruction of the police. Further, the circumstances when the Ambulance defendants arrived at the Plaintiff's home gave them no reason to doubt the propriety of the police's decision to commit the Plaintiff for emergency examination under Section 17a-503. Shortly after they arrived, the door to the police cruiser was opened and the Plaintiff was agitated and combative, protesting loudly against entering the ambulance, initially refusing to exit the back of the cruiser, and struggling against moving to the stretcher, all of which required Officers Canepari and Harris to pull her out of the car and forcibly move her to the stretcher, with the EMTs then helping to secure her. The scene was loud and chaotic, and the EMTs reported that they smelled alcohol on the Plaintiff. ECF No. 329-2 at (Wilton Volunteer Ambulance report noting that "patient smelled of alcohol").[7]  Under these circumstances, the Ambulance defendants had no basis to question the police officers' decision to take the Plaintiff into custody and arrange for her forcible transport to the hospital for emergency examination.  No reasonable juror could find that the Ambulance defendants falsely imprisoned the Plaintiff on this record.

5. Count 5: Malicious Prosecution and Malicious Abuse of Process.  Summary judgment is granted as to this claim for the reasons stated in my ruling on the Wilson police defendants' motion judgment.

---

[7] While the Plaintiff disputes that she was intoxicated, she has not raised a genuine dispute of material fact about what the EMTs smelled.

6.  Count 6: Municipal Liability. This claim is not applicable to these defendants.

7.  Count 7:  Conspiracy.  The Plaintiff alleges that all "the Defendants conspired and acted in concert to engage in conduct which was unlawful, false and fraudulent to cause the arrest, prosecution, and detention of Plaintiff."  ECF No. 199 ¶ 361.  The Plaintiff claims that the EMTs "conspired with the Wilson police defendants on how to 'cover' and justify their collective unlawful actions."  ECF No. 323 at 5.  In support, she cites her affidavit in which she avers that she saw "Canepari mouthing the words 'we have to cover' to Defendants Kennedy and Bryson."  ECF No. 325-1 ¶ 90.  She maintains that "pursuant to the conspiracy," Bryson falsely stated in a report that she had "kicked at police" and "was kicking at police and [the EMTs]," ECF No. 329-2, and Downs falsely stated in another document that she was "arrested for assault."  ECF No. 329-3.

To prove a conspiracy to violate civil rights under 42 U.S.C. § 1983, "a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

There is no evidence that the EMTs knew that the police defendants were involved in an allegedly unconstitutional use of force against the Plaintiff involving excessively tight handcuffing – the Plaintiff's only surviving constitutional claim.  As discussed above, the handcuffs were removed shortly after the EMTs arrived, and the Plaintiff's claim that the EMTs themselves used excessive force fails for lack of proof.  Canepari's alleged "mouthing" of words – for which the Plaintiff provides no citation to the body worn camera footage – falls short of creating a reasonable inference that the EMTs and the police officers had an agreement of any kind, let alone an agreement to violate the Plaintiff's constitutional rights.   And the Plaintiff's attempts to demonstrate the EMTs' agreement by pointing to various statements in their reports similarly falls

short when all the circumstances are considered.  The EMTs arrived at the Plaintiff's home well

after she had voiced her complaints about excessively tight handcuffs.  Further, as discussed above,

the scene they confronted shortly after their arrival was loud and chaotic, and events moved

quickly.  While the body worn camera footage suggests that the EMTs were inaccurate in their

reports about the kicking and the assault arrest (a point addressed further below in my discussion

of the defamation claims), it also suggests that any such inaccuracies were mistaken observations

about fast-moving, chaotic events. In any event, neither the footage nor any other evidence in the

record provides support for the notion that those statements were concocted as part of a conspiracy

to "cover" the police's allegedly excessively tight handcuffing of the Plaintiff, which the Plaintiff

did not specifically bring to the EMTs' attention.   Even when the evidence is viewed in light most

favorable to the Plaintiff, no reasonable juror could find that the EMTs took any actions in concert

with the police with knowledge of a scheme to deprive the Plaintiff of her constitutional rights or

with the intent to further such a scheme. *See Pangburn*, 200 F.3d at 72  (requiring plaintiff charging

private person with § 1983 conspiracy to prove that person acted "in concert" with state defendants

in order "to inflict an unconstitutional injury").

8.  Count 8: Assault and Battery.  The Plaintiff alleges that while she was in the ambulance,

Bryson, Kennedy, and Downs "administered unnecessary medical care which was competently

refused." ECF No. 199 ¶ 367. She further alleges that they "threaten[ed] to inject [her] with

sedatives, without any medical reason or necessity."  ECF No. 199 ¶¶ 136, 139.

Under Connecticut law, "assault" occurs when one intentionally places another in

apprehension of bodily harm; and "battery" occurs when one intentionally causes harmful or

offensive contact with another. *Alteiri v. Colasso*, 168 Conn. 329, 334 & n.3 (1975). "To establish

a claim for assault and battery, plaintiff must prove that defendants applied force or violence to

him and that the application of force or violence was unlawful." *Bryant v. Hartford*, 2021 WL 4477311, at *14 (D. Conn. Sept. 30, 2021).

Plaintiffs' claims about unnecessary medical care do not survive a review of the record. The EMTs were dispatched to transport the Plaintiff to the hospital, at the instruction of the police, who had determined that she was impaired and was dangerous to herself or others, and in need of immediate medical care and treatment. As noted, nothing the EMTs observed after their arrival would have reasonably led them to challenge that determination. The EMTs sought to take her vital signs and test her glucose as part of their medical assessment. And when she was uncooperative and thwarted their efforts, Downs told her that he would administer a sedative. To the extent that the Plaintiff alleges that this conduct constituted an assault, that claim fails. The record is clear that the EMTs were merely conducting a medical assessment pursuant to their duty to transport the Plaintiff, as directed by the police, to the hospital because they believed – based on information provided to them by the police – that she was incapacitated. Indeed, Section 17a-503(a) suggests that, apart from it being the police's call whether to commit the Plaintiff for emergency examination and arrange for her transport to a hospital, that hospital personnel, which, according to the Plaintiff's allegations, includes the EMTs, had an independent duty to examine her, which would include taking her vital signs and performing other basic tests. Conn Gen. Stat. Sec. 17a-503(a)(following determination by police that person is dangerous to self and others and in need of immediate care and treatment, "[t]he person *shall be examined* within twenty-four hours …." (emphasis added)).

The Plaintiff also alleges a claim of sexual assault against the EMTs. ECF No. 277-10, Pal Dep. at 108 (Q: "Are you specifically alleging in this lawsuit that you were sexually assaulted on May 5, 2018 or not? A: Yes, I am specifically alleging that."); ECF No. 322-1 ¶ 65. In her affidavit,

she avers that she "repeatedly told Defendants Harry Downs, Drew Kennedy and Joseph Bryson not to touch me.  Despite this, Defendants Drew Kennedy and Joseph Bryson continued to grope my breasts and upper and inner thigh areas unnecessarily and improperly."  ECF No, 325-1, Pal Aff. ¶ 104.[8]  The Defendants respond that this claim is "baseless" and argue that such a claim is unsupported by the video and audio evidence.  ECF No. 282-1 at 23-24.

The Defendants are correct that the video footage does not reveal any evidence of a sexual assault.[9]  However, although the majority of the Plaintiff's encounter with the EMTs was captured on body cameras worn by Canepari, Baker, or Tornello, there are a few short intervals when an officer is not in the ambulance and there is, therefore, no video evidence showing the actions of the EMTs and the Plaintiff. First, for about a minute and a half, Officer Baker exited the ambulance to call for female police officer.  Pl's Ex. 27, Baker BWC 20:46:02 – 47:25.  Upon his re-entering the ambulance, the Plaintiff was calm and stated that "there is no emergency."  Baker BWC 20:47:29. Second, for another brief interval, Baker moved from inside the ambulance with the EMTs to the steps of the ambulance to speak to Tornello when she arrived on the scene.  Baker BWC 20:53:38.  The Plaintiff yelled, "No," and Tornello entered the ambulance.  Baker BWC 20:54:13.  When Tornello entered, the Plaintiff asked, "Who is the female officer?  I refuse any medication, any treatment, these people are forcing me. No reason.  There's no medical emergency. I'm a physician."  Baker BWC 20:54:13-24.  The footage shows that the EMTs were trying to test her glucose level.  Third, Tornello stepped out of the ambulance to speak to Harris about moving

---

[8] The Plaintiff states that Kennedy "threatened to sexually assault her by stating he 'was just there to put mileage [on] her.'"  ECF No. 323-1 at 14.  The actual statement Kennedy made to Bryson is, "I'm not giving mileage if you have a police officer in the back."  Tornello BWC 21:00:22-32. According to Plaintiff, "mileage" is "a term commonly used by EMTs and police when referring to sexual assault on a patient/person in custody."  ECF No. 323-1 at 14; ECF No. 320-1 ¶ 58; ECF No. 325-1, Pal Aff. ¶ 112.  She points to nothing in the record to support this interpretation.
[9] Thus, as I stated in the Wilton Police Defendants' summary judgment ruling, because the Plaintiff's entire encounter with Officers Baker, Harris, Canepari, and Tornello was recorded, any claim of sexual assault as to them is foreclosed.

her cruiser.  Tornello BWC 20:57:28-47.  As she stepped back into the ambulance, the Plaintiff said, "nothing's happening." Tornello BWC 20:57:47.

To be sure, the unrecorded moments are very brief and unaccompanied by any statements by the Plaintiff suggesting that a sexual assault took place.  In addition, there are several instances in which the Plaintiff told Kennedy about the alleged assault by his colleagues in 2015, making no mention that he or Bryson had assaulted her.  For example, when the ambulance arrived at the hospital, Kennedy (who had been driving) opened the ambulance doors and greeted the Plaintiff. She called him a "motherfucker," to which he protested "I don't know why you say that.  I didn't do anything to you."  The Plaintiff responded "Yeah, you're right.  You didn't.  Actually I should call you Boy Scout of the Year."  She then said, "But your compadres did.  Your compadres did something really bad to me." Tornello BWC 21:19:01-29.  Although the evidence that the Plaintiff was sexually assaulted is slim, on summary judgment, "it is undoubtedly [my] duty [ ] not to weigh the credibility of the parties." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for [the court] on summary judgment." *Id.* at 553.  Because there is a genuine issue of material fact as to this claim, summary judgment is denied.

9.  Counts 9 and 10: Negligent and Intentional Infliction of Emotional Distress. To prevail on a claim for negligent infliction of emotional distress, a plaintiff must show that a "defendant should have realized that [his] conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm."[10] *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 446 (2003) (internal quotation marks and citation omitted).

---

[10] The Wilson Ambulance argue that they have immunity as to any negligence claims under Conn. Gen. Stat. § 52–557b(b), which they pled as an affirmative defense.  ECF No. 282-1 at 29; ECF No. 272 at 34 (Fifth Aff. Defense). Conn. Gen. Stat. § 52–557b(b) provides in relevant part:

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must show "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Watts v. Chittenden*, 301 Conn. 575, 586 (2011). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (2000). "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Fernandez v. Clean Harbors Envtl. Servs., Inc.*, 2006 WL 8447751, at *2 (D. Conn. May 30, 2006) (citations omitted). Rather, the conduct must be "of a nature that it is especially calculated to cause, and does cause, mental distress of a very serious kind." *Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 194 (D. Conn. 2000). Summary judgment is denied on these counts insofar as they are premised on the Plaintiff's sexual assault claim, as to which I have determined a factual dispute exists.

---

A paid or volunteer firefighter or police officer, a teacher or other school personnel on the school grounds or in the school building or at a school function, a member of a ski patrol, a lifeguard, a conservation officer, patrol officer or special police officer of the Department of Energy and Environmental Protection, or *emergency medical service personnel*, who has *completed a course in first aid offered by the American Red Cross, the American Heart Association, the National Ski Patrol, the Department of Public Health or any director of health, as certified by the agency or director of health offering the course,* and who renders emergency first aid to a person in need thereof, shall not be liable to such person assisted for civil damages for any personal injuries which result from acts or omissions by such person in rendering the emergency first aid, which may constitute ordinary negligence ... The immunity provided in this subsection does not apply to acts or omissions constituting gross, wilful or wanton negligence*." (Emphasis added.)*

The Defendants however have not adduced evidence to demonstrate that they meet the statutory criteria - namely that they have completed the requisite first aid course required by the statute. *See Reyes v. W. Connecticut Health Network, Inc.*, 2014 WL 2053984, at *3 (Conn. Super. Ct. Jan. 16, 2014) (ambulance personnel submitted sufficient proof that "they have completed the requisite first aid course as required").

10.  Counts 11-13: Libel, "Defamation," and Defamation Per Se.  The Plaintiff alleges that Bryson, Kennedy, and Downs made oral and written defamatory statements about her.   To establish a defamation claim under Connecticut law, a plaintiff must show: "(1)  the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 627 (2009). A "defamatory statement" is a "communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* "[F]or a claim of defamation to be actionable," the defamatory statement must also be "false." *Cweklinsky v. Mobil Chem. Co.*, 267 Conn. 210, 228 (2004).  "[S]lander is oral defamation and libel is written defamation."  *Gleason v. Smolinski*, 319 Conn. 394, 430 n.30 (2015)(internal quotation marks omitted).

A claim of defamation *per se* requires a plaintiff to allege a statement whose "defamatory meaning ... is apparent on the face of [it]," and accordingly the statement "is actionable without proof of actual damages." *Battista v. United Illuminating Co.*, 10 Conn. App. 486, 491-92 (1987) (citation omitted). "When the defamatory words are actionable *per se*, the law conclusively presumes the existence of injury to the plaintiff's reputation." *Id.* at 492 (citation and internal quotation marks omitted). Whether a statement constitutes defamation *per se* "is a question for the court." *Id.* (citation and internal quotation marks omitted). "Connecticut has generally recognized two categories of statements which are actionable as defamatory *per se*: (1) statements charging a plaintiff [with] a crime, and (2) statements that injure a plaintiff in their profession." *Wynn v. New Haven Bd. of Educ.*, No. 3:21CV925(SVN), 2022 WL 1063732, at *4 (D. Conn. Apr. 8, 2022) (citations omitted).

Truth is an absolute defense to an allegation of defamation. *See, e.g.*, *Goodrich v. Waterbury Republican–American, Inc.,* 188 Conn. 107, 112 (1982). "A defendant is not required to prove complete or absolute truth; substantial truth will suffice." *Dean v. Liberation Programs, Inc.*, 2015 WL 6558263, at *6 (Conn. Super. Ct. Oct. 5, 2015). "[W]here minor inaccuracies [are] immaterial to the 'sting' or harm suffered by the plaintiff ... [or] where the inaccuracies [are] of a technical nature that conveyed the same meaning as the true facts would have in the eyes of the average reader, summary judgment may be appropriate." *Mercer v. Cosley,* 110 Conn. App. 283, 304 (2008) (internal quotation marks and citation omitted). "Where statements alleged to be defamatory are shown to be substantially true, a plaintiff has failed to meet her burden, and summary judgment may properly enter." *Dean*, 2015 WL 6558263, at *6 (citation omitted).

*Report by Downs*

The Plaintiff alleges that Downs falsely stated that she was "arrested for assault" in a report for Norwalk Hospital that was "circulated" "amongst multiple employees and personnel of Norwalk Hospital and Norwalk Emergency Medical Services Department." ECF No. 199 ¶¶ 119-121.  The report states in pertinent part:

> History of Present Illness
> Wilton PD responded on a domestic dispute, arrived to find intoxicated female.  Pt verbally abusive to police, & pushed them.  Pt arrested for assault, ambulance called.  Pt refusing any physical contact or evaluation, medic dispatched.  Now, pt very abusive to EMS, using foul language & threatening to sue us. Odor of ETOH on breath. Pt sts she was transported, possibly last year or the year before, & was sexually assaulted in the ambulance. Pt insists on a female PD officer.

ECF No. 329-3 at 1.

The Defendants argue that Downs is entitled to summary judgment because the document at issue is a "medical record[] subject to HIPAA [Health Insurance Portability and Accountability Act] regulations and therefore is confidential and not published to warrant a defamation claim."

ECF No. 282-1 at 28.  This is the extent of the Defendants' argument,  which is unaccompanied by any citation to Connecticut law.  Alternatively, the Defendants posit that the statement is not defamatory because the Plaintiff later told a healthcare provider that she had been arrested,[11] ECF No. 282-1 at 29, but again fail to develop this argument or support it with any legal authority, much less Connecticut caselaw.  On this record, I find that Defendants have not carried their burden on summary judgment and the motion is denied as to this claim.

*Report by Bryson*

The Plaintiff alleges that Bryson and Kennedy authored a document for Wilton Volunteer Ambulance that falsely states that she was "kicking at police." ECF No. 199 ¶ 178.  The report states in pertinent part:

> [Unit] 512[[12]] arrived on scene and met with Wilton PD who explained patient was restrained in back of police car in driveway.  PD explained patient was agitated and combative.  Patient's husband and mother were speaking with officers near the police car, and tried to calm patient when officers opened door.  512 observed patient in back of car when PD opened door.  Patient, with hands cuffed behind back, was yelling and kicking at police.

ECF No. 329-2 at 1.  A later statement in the report states that during the transfer to the stretcher, "Patient was yelling and kicking at police and [the EMTs]."  ECF No. 329-2 at 3.  The report is electronically signed by Bryson.  ECF No. 329-2 at 4.

As a preliminary matter, the Defendants argue that Kennedy is entitled to summary judgment because he did not author the report.  ECF No. 282-1 at 28.  The Plaintiff's denial in her Local Rule 56(a)(2) Statement cites no supporting evidence.  ECF No. 322-1 ¶ 24.  Summary judgment is granted as to Kennedy on this claim.

---

[11] The Plaintiff understood her interaction with the Wilton Police as culminating in an arrest.  In fact, she brought a false arrest claim in this action.  Whether she was arrested or not is, in this instance, a legal determination.  But the statement at issue - that she was "arrested for assault" - is a factual statement that is indisputably false.

[12] This appears to refer to the ambulance manned by Bryson and Kennedy.

The Defendants next argue that Bryson is entitled to summary judgment because the statements were not false. ECF No. 281-1 at 31 ("there is truth in the statements Plaintiff has deemed as false"). Specifically, the Defendants assert that "Plaintiff can be seen in the BWC videos kicking her feet at the police window and in the direction of the police." *Id.* But the video footage they cite shows the Plaintiff kicking the partition in the cruiser before the car door is opened. It does not show that she attempted to kick any officer or EMT. I deny summary judgment as to this claim.

*Slander*

The Plaintiff next alleges that while in the ER, Bryson, Downs, and Kennedy made false statements to "various medical and non-medical persons present in the ER, that Plaintiff had 'assaulted the police' and that 'plaintiff was going to be arrested.'" ECF No. 199 ¶¶ 175 -77.

The Defendants first argue that Downs is entitled to summary judgment because he "never went to the Hospital." ECF No. 282-1 at 27; ECF No. 277-18, Downs Dep. at 28 ("Q: [W]here did you go back to after this incident was over?" A: I have an office at the Wilton Volunteer Corps.") The Plaintiff disputes this and offers her affidavit that she saw him, and the other EMTs, outside the ER room she was in. ECF No. 325-1, Pal Aff. ¶ 123. Because of this factual dispute, Downs is not entitled to summary judgment on this ground.

The Defendants next argue that the claim fails because neither the speaker nor the Plaintiff are sufficiently identified to state a defamation claim. ECF No. 282-1 at 27.

The Plaintiff's evidence in support of this claim comes from the deposition testimony of her husband. He testified in pertinent part

> Q. Okay. Do you recall overhearing or hearing anyone speak about the events or your wife's conditions in the hospital on that day?
> A. I might have heard one of the EMT guys saying that she assaulted a cop, she's going to get arrested.

> Q. Okay. Can you describe the EMT that said that?
> A. I mean, I don't have a recollection. . . .
>
> Q. Who was it being spoken to?
> A. Probably among themselves or . . .

ECF No. 277-11, Yadav Dep. at 134.

He further testified:

> Q. Okay. Were there other people present while these EMTs were making those statements?
> A. Yes.
> Q. Were those people, some of them patients, family members of patients, employees of the hospital to your knowledge?
> A. Yes.

ECF No. 277-11, Yadav Dep. at 179.

> Q. Did you hear these EMTs identify your wife by name?
> A. I did not.
> Q. How do you know they were talking about your wife?
> A. It's just, like, at that point one guy probably looked familiar.
> Q. One guy probably looked familiar?
> A. Looked familiar
> Q. All right. What made him look familiar?
> A. Because at that point of time I had better recollection of the guys there.
> * * *
> Q. What about that guy? What about that guy is memorable with glasses?
> A. I guess probably the statement was made by that guy.[13]

ECF 277-11 at 196, 202.

The Defendants first suggest that Yadav's initial testimony that he "might" have heard these comments is insufficient to raise a genuine dispute of material fact, but the testimony did not end there, with Yadav going on to answer more definitively other questions along the same lines. ECF No. 277-11 at 179 ("Q. Okay. Were there other people present while these EMTs were making those statements? A. Yes. Q. Were those people, some of them patients, family members of patients, employees of the hospital to your knowledge? A. Yes."). The Defendants then argue

---

[13] All three EMTs wear glasses. Tornello BWC 20:56:48, 20:59:42.

that they are entitled to summary judgment because the alleged statement did not identify the Plaintiff to a third person.  But the failure to use a specific name is not necessarily fatal.  The statement need only be "of and concerning" the plaintiff. *See QSP, Inc. v. Aetna Casualty and Surety Co.,* 256 Conn. 343, 356 (2001). In *QSP*, the Connecticut Supreme Court looked to the Second Restatement of Torts when determining what qualifies as "of and concerning" the plaintiff. *Id.*  Under the Restatement, "a defamatory communication is made concerning the person to whom its recipient correctly, or mistakenly but reasonably, understands that it was intended to refer." *Id.* citing 3 Restatement (Second), Torts § 564 (1976). Comment a to the cited Restatement section provides as follows: "It is necessary that the recipient of the defamatory communication understand it as intended to refer to the plaintiff. If it is in fact intended to refer to him, it is enough that it is so understood …."  "[W]here 'a reasonable person could conclude that the defendant was referring to the [plaintiff] in his statement,' the plaintiff is sufficiently identified to meet the 'of and concerning' element whether or not the statement expressly names him." *Stevens v. Helming*, No. CV116019393S, 2014 WL 3805495, at *17 (Conn. Super. Ct. June 23, 2014), *aff'd*, 163 Conn. App. 241 (2016).  *See Kirch v. Liberty Media Corp.,* 449 F.3d 388, 399 (2d Cir. 2006) (noting that "[t]here are indeed cases ... where a statement was held to be 'of and concerning' the plaintiff even though ... not naming the plaintiff, [where the statement] could have been understood by a reasonable reader as being, in substance, actually *about* him or her") (emphasis in original); *Dongguk Univ. v. Yale Univ.,* No. 08-CV-0441(TLM), 2012 WL 441250, at *7 (D. Conn. Feb. 10, 2012) (finding that "a reasonable jury could conclude that Yale had in effect called Dongguk a purveyor of untruth, a liar, thus identifying Dongguk. This is so even though Yale never specifically mentioned 'Dongguk' in any of its public statements." (internal quotation marks omitted)).  Viewing the evidence most favorably to the Plaintiff, the non-moving party in this case,

I find that there is a genuine issue of material fact concerning whether people present when the statements were made could understand that the statement was "of and concerning" the Plaintiff.

11.   Count 14: Negligence: Norwalk Hospital, Wilton Volunteer Ambulance, Nuvance Health[14]

> The Plaintiff alleges that
>
> The injuries damages, and losses sustained by the Plaintiff were caused by the negligence and carelessness of … all Defendants including TOWN OF WILTON, NORWALK HOSPITAL, NUVANCE HEALTH Inc., including, but not limited to, one or more of the following ways: in that, it failed to properly train the individual Defendants with regard to the proper litigation and procedures for arrests and investigations; in that, it failed to properly train the individual Defendants with regard to the use of force; in that, it failed to properly train the individual Defendants with regard to the proper use of Tasers; in that, it failed to properly train the individual Defendants in the safe performance of their duties; in that, it failed to properly screen the individual Defendant(s) for behavioral problems prior to hiring them; in that, it failed to properly supervise the individual Defendants with regard to the incident in question; in that, it failed to properly supervise and train the individual Defendants and such failure was a deliberate indifference to the probable consequences or constituted an implicit authorization of such consequences; in that, it participates in customs that lead to violations of individual constitutional rights; in that, it acted with deliberate indifference to the constitutional rights of Plaintiff, and similarly situated persons; in that, it failed to enforce the law as it existed; in that, it failed to prevent its police officers and emergency/ambulance personnel from committing illegal actions when it knew or should have known such actions were taking place; in that, it had notice of but repeatedly failed to make any meaningful investigation into charges that its police officers were repeatedly violating Plaintiff's rights under the Constitution of the United States and the State of Connecticut.

ECF No. 199 ¶ 399.

---

[14] Although the parties do not address it, it does not appear that Nuvance was ever served.  The Plaintiff added Nuvance as a defendant in the Sixth Amended Complaint but there is no proof of service filed on the docket as to the entity and no answer or appearance was filed on its behalf.  ECF No. 265 (Pl's notice of service does not mention Nuvance.) Under Rule 4 of the Federal Rules of Civil Procedure, a plaintiff is required to serve a summons along with a copy of the complaint on the defendant "within the time allowed under Rule 4(m)." Fed. R. Civ. P. 4(c). Further, the plaintiff must effect proper service on a defendant within 90 days of the filing of the complaint. Fed. R. Civ. P. 4(m). If the plaintiff fails to properly serve the defendant, a "court ... must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id.*  Accordingly, Plaintiff's claims against Nuvance are dismissed.

These allegations allege institutional liability for failure to train and supervise and negligent hiring. But the Plaintiff has not alleged any facts in support of this claim as to these Defendants nor has she offered any evidence supporting the notion that either the Town of Wilton or Norwalk Hospital failed to train, failed to supervise, or negligently hired Downs, Kennedy, or Bryson. Summary judgment is granted as to Count 14.

*Vicarious Liability*

Although not set forth in a separate count, the Plaintiff briefly alleges that Wilton Volunteer Ambulance, Norwalk Hospital, and Nuvance Health[15] are liable for the alleged unlawful conduct of Bryson, Kennedy and Downs. ECF No. 199 ¶ 198 (alleging Wilton Ambulance is vicariously liable); ¶ 199 (alleging Norwalk Hospital and Nuvance Health are liable because EMTs' actions were taken during their employment). The Plaintiff alleges that Wilton Volunteer Ambulance is "under the direct supervision and control" of Norwalk Hospital and Nuvance Health, which owns and operates Norwalk Hospital, ECF No. 199 ¶¶ 12-14. She alleges that Bryson, Kennedy and Downs are employed by Norwalk Hospital and/or Western Connecticut Health System[16] and/or Nuvance Health. ECF No. 199 ¶¶ 25, 27, 29.

"[U]nder the common-law principle of *respondeat superior*, an employer is vicariously liable for compensatory damages arising out of the tortious conduct of his employee when that conduct occurs during the course of the employee's employment." *Matthiessen v. Vanech*, 266 Conn. 822, 839 (2003) (emphasis omitted). The Ambulance Defendants do not appear to dispute this legal theory but argue that "Norwalk Hospital is entitled to judgment as to Bryson . . . and Kennedy for the vicarious liability allegations" because they "were volunteers with Wilton Volunteer Ambulance and were not paid or employed by Norwalk Hospital." ECF No. 281-1 at

---

[15] See footnote 14.
[16] This entity is not named as a party.

36.[17]   In support of their assertion that Kennedy and Bryson were not employed by Norwalk Hospital, they cite Bryson's deposition testimony and Kennedy's affidavit, in which each testified that on May 5, 2018 they were a volunteer member with Wilton Volunteer Ambulance and were not paid or employed by Norwalk Hospital.  ECF No. 277-17, Bryson Dep. at 12-13; ECF No. 277-22, Kennedy Aff. ¶¶ 2-4.

The Plaintiff disputes this. ECF No. 322-1 ¶¶ 22-23, 26-27; ECF No. 323 at 2.  She argues that in *Pal v. Bryson,* 320cv630, which was consolidated with this case, Attorney Mullins filed an Answer admitting the allegations in the complaint that Kennedy and Bryson were employed by Norwalk Hospital.  The Plaintiff is correct, *see Pal v. Bryson*, 3:20cv630, ECF No. 21 ¶¶ 6, 7; ECF No. 333-6, and the Answer filed by Attorney Mullins is sufficient to raise a genuine dispute of material fact with respect to the Plaintiff's claims against Norwalk Hospital.  To be sure, the answer in *Pal v. Bryson*, 20cv630, was superseded by the Ambulance defendants' and Norwalk Hospital's later answer to the Sixth Amended Complaint filed after *Pal v. Bryson* was consolidated with *Pal v. Canepari*, 3:20cv13, and that in the operative answer, these defendants denied that Bryson and Kennedy were employed by Norwalk Hospital  See ECF No. 199, Plaintiff's Sixth Amended Complaint,  ¶¶ 25 (Bryson), 27 (Kennedy) and ECF No. 272, 274 (answers to Sixth Amended Complaint).  But even a superseded answer or complaint may serve as a source of evidentiary admissions and is thus enough to raise a genuine dispute of material fact in the face of Kennedy's and Bryson's sworn statements.  *See United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984)("The law is quite clear that [superseded pleadings in civil litigation] constitute the admissions of a party-opponent and are admissible in the case in which they were originally filed as well as in any subsequent litigation involving that party."); *In re C.F. Foods, L.P.* 265 B.R. 71, 87 (Bankr. E.D.

---

[17] It is undisputed that Downs is employed by Norwalk Hospital.  ECF No. 281 ¶ 32; ECF No. 322-1 ¶ 32; ECF No. 277-18, Downs Dep. at 8 (testifying that he "is not part of Wilton Ambulance" and "work[s] for Norwalk Hospital").

Pa. 2001)("A party may introduced superceded admissions into evidence to be considered as adverse evidentiary admissions by the fact-finder."). Therefore, I must deny the motion for summary judgment as to Norwalk Hospital for the vicarious liability claims stemming from the actions of Bryson and Kennedy.  I note, however, that the hospital may not be held liable for any sexual assault on the Plaintiff.  An employer may be held vicariously liable for intentional torts of an employee only when those torts are committed in furtherance of the employer's business, which means that "it must be the affairs of the [employer], and not solely the affairs of the [employee], which are being furthered in order for the doctrine [of respondeat superior] to apply."  *Gutierrez v. Thorne*, 13 Conn. App. 493, 498 (1988) (internal quotation marks and emphasis omitted).  An employee's sexual assault of a client or customer does not further the employer's business.  *Id.* (finding that Connecticut Commissioner of Mental Retardation was not liable on a theory of respondeat superior to plaintiff who had been sexually assaulted by Commissioner's employee: "[I]t is clear that [the employee] was not furthering the [employer's] business interests when he sexually assaulted the plaintiff.").

The Ambulance Defendants next argue that Wilton Volunteer Ambulance Corp. is entitled to partial judgment as to any conduct attributable to Downs because it is undisputed that he was employed by Norwalk Hospital.[18]  The Plaintiff does not contest this in her papers.  Summary judgment is granted as to Wilton Volunteer Ambulance for any vicarious liability claims stemming from Downs.

## IV.    CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment (ECF No. 281, 282) are GRANTED as to counts as to 1-7 and 14, and the vicarious liability claim against Wilton

---

[18] The Ambulance Defendants do not otherwise move for summary judgment as to the vicarious liability of Wilton Ambulance and so that claim will remain for trial.

Volunteer as to Downs, and DENIED as to counts 8-13 and the vicarious liability claim against Norwalk Hospital.  The Plaintiff's claims against Nuvance are dismissed.   The claims remaining for trial are assault and battery (count 8), negligent infliction of emotional distress (count 9), and intentional infliction of emotional distress (count 10), all of which are based on the alleged sexual assault;  libel (count 11), defamation (count 12), and defamation per se (count 13), which are based on the statements in the reports and at the hospital; and vicarious liability against the hospital and Wilton Ambulance, which are also based on the statements in the reports and at the hospital.

IT IS SO ORDERED.

Dated: March 30, 2023
          Hartford, Connecticut

_____/s/_____
          Michael P. Shea, U.S.D.J.