**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| NEELU PAL, Plaintiff, | : | |
| v. | : | 3:20-CV-13 (SFR) |
| MARK CANEPARI, *ET AL.*, Defendants. | : | |

## RULING ON MOTION IN LIMINE

Self-represented Plaintiff Neelu Pal asserts a Fourth Amendment excessive force claim and state law claims against Wilton police officers Mark Canepari, Arnault Baker, and Brandon Harris (the "Wilton Police Defendants"). Pal also asserts state-law claims against EMTs Joseph Bryson, Drew Kennedy, and Harry Downs (the "EMT Defendants"), and derivative claims against the Town of Wilton, Wilton Volunteer Ambulance, and Norwalk Hospital.

Defendants have filed a motion in limine, ECF No. 398. For the reasons explained below, Defendants' motion in limine is granted in part and denied in part.

## I. BACKGROUND

The operative pleading is the Sixth Amended Complaint filed June 21, 2021. ECF No. 199. The Court[1] granted in part and denied in part Defendants' motions for summary judgment on March 30, 2023. *Pal v. Canepari*, No. 3:20CV13 (MPS), 2023 WL 2712371 (D. Conn.

[1] The Honorable Michael P. Shea, Chief United States District Judge, presided over this action until it was transferred to me on January 31, 2025. ECF No. 380. Chief Judge Shea also presided over Pal's prior action, *Pal v. Cipolla*, No. 18-cv-616.

Mar. 30, 2023), ECF N. 347; *Pal v. Canepari*, No. 3:20CV13 (MPS), 2023 WL 2716595 (D. Conn. Mar. 30, 2023), ECF No. 358.[2]

The parties submitted the Joint Trial Memorandum on March 14, 2025. ECF No. 382. After convening the parties for a status conference, I scheduled trial for September 2026 and set deadlines for motions *in limine*. ECF No. 386. Defendants filed a single, omnibus motion *in limine*. ECF No. 357. Pal filed an opposition. ECF No. 399. Defendants replied in support of their motion. ECF No. 400. I conducted a trial management conference on July 20, 2026. ECF No. 405. I resolved several of the issues in an order on the docket on July 22, 2026. ECF No. 406. I convened a second trial management conference on August 20, 2026, ECF No. 435, and resolved additional evidentiary issues in an order on the docket dated August 21, 2026, ECF No. 433. I convened a third trial management conference on September 1, 2026. ECF No. 462. Jury selection will proceed on September 4, 2026, with evidence to begin on September 8, 2026.

## II. <u>LEGAL STANDARD</u>

Motions in limine "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieiri v. Defaria*, 88 F.3d 136, 141 (2d. Cir. 1996). "Evidence should be excluded on a motion *in limine* only when it is clearly inadmissible on any grounds." *Morant v. City of New Haven*, No. 3:22-CV-630 (SVN), 2026 WL 1108118, at *2 (D. Conn. Apr. 23, 2026). "A court's ruling on a motion in limine is not

---

[2] The U.S. Court of Appeals for the Second Circuit affirmed. *Pal v. Canepari*, No. 23-730, 2024 WL 4341360 (2d Cir. Sept. 30, 2024).

set in stone; it 'is subject to change when the case unfolds. . . . Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.'" *Id.* (quoting *Palmieiri*, 88 F.3d at 139).

To be admissible at trial, evidence must be relevant. Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. The standard is "very low." *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (quoting *United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008)). All relevant evidence is admissible unless the United States Constitution, a federal statute, the Federal Rules of Evidence, or rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 402; *see White,* 692 F.3d at 246. Relevant evidence may nevertheless be excluded by a court "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The moving party bears the burden of establishing the inadmissibility of the evidence for any purpose. *See United States v. Pugh*, 162 F. Supp. 3d 97, 101 (E.D.N.Y. 2016).

## III. DISCUSSION

Defendants seek to preclude Pal from (1) arguing she is entitled to recover on the basis of claims that were dismissed at summary judgment, ECF No. 398, at 20, and (2) presenting "testimony, evidence, argument or comment on prior interactions with the WPD, its employees, or prior litigation against such entities and parties." *Id.* at 13. I address each argument in turn.

**A. Previously Dismissed Claims**

Defendants move to preclude Pal from discussing the claims brought in this action that were previously with prejudice. ECF No. 398, at 20. Pal responds that "[w]ithholding this information from the jury would be extremely prejudicial to Plaintiff and will not allow the jury the required context to fully evaluate Plaintiff's claims." ECF No. 399, at 9. Pal has also suggested that she believes the jury should be able to evaluate dismissed claims because the Court's ruling on Defendants' motions for summary judgment is an "interlocutory order" rather than a "final decision." ECF No. 436, at 29.

The Court granted summary judgment to Defendants on Pal's claims of retaliation in violation of the First Amendment, unlawful entry and seizure in violation of the Fourth Amendment, malicious prosecution, as well as her *Monell* claim against the Town of Wilton and a civil rights conspiracy claim. *Pal v. Canepari*, 2023 WL 2712371, at 28; *Pal v. Canepari*, 2023 WL 2716595, at *13. Moreover, the Court allowed only certain portions of other counts to proceed to trial. In particular, the Court allowed Pal's Fourth Amendment excessive force claim to proceed only with respect to her allegations against the Wilton Police Defendants regarding the manner in which she was handcuffed. The Court allowed Pal's assault and battery claims to proceed against the Wilton Police Defendants with respect to the handcuffing and against the EMT Defendants with respect to the sexual assault allegations. Similarly, the Court allowed Pal's claims of negligent and intentional infliction of emotional distress to proceed to the extent they are premised on her allegations against the Wilton Police Defendants with respect to the handcuffs and premised on her allegations that she was sexually assaulted by the EMT Defendants. The Court allowed Pal's defamation claim against Canepari to proceed only with respect to Canepari's statement in the § 17a-503(a) request that Pal

"repeatedly told officer she would 'fucking kill you.'" With respect to the EMT Defendants, the Court allowed Pal's defamation claim to proceed only with respect to Down's report to Norwalk Hospital stating that Pal was "arrested for assault" and Bryson's report stating Pal was "kicking at police." Finally, the Court allowed Pal's slander claim to proceed against the EMT Defendants relating to their statements at Norwalk Hospital that Pal had "assaulted police" and "was going to be arrested." With respect to all other portions of these various claims, the Court granted summary judgment.

Pursuant to Rules 401 and 403, I preclude Pal from arguing to the jury that she is entitled to recover on the basis of claims, or portions of claims, that were dismissed at summary judgment or earlier in the case.[3] I will also preclude Pal from testifying about what claims were previously dismissed. Pal has not articulated any reason why a discussion of her dismissed claims offers necessary context to the triable issues. Nor would it be appropriate at this juncture to reconsider the Court's determination that these claims should be dismissed with prejudice. Finally, discussing the claims that will not be tried poses a substantial likelihood of confusing the jury. *See Hannah v. Wal-Mart Stores, Inc.*, No. 3:12-CV-01361 (VAB), 2017 WL 690179 (D. Conn. Feb. 21, 2017) ("Where claims have been dismissed on summary judgment, therefore, it is generally appropriate to preclude testimony or evidence regarding those same previously dismissed claims during a jury trial."), *aff'd*, 803 F. App'x 417 (2d Cir. 2020). Any testimony or argument in contravention of this instruction will be stricken.

---

[3] This ruling therefore applies to Pal's claim that Baker submitted a false report to the Connecticut Department of Children and Families claiming that Pal had neglected her children, which the Court dismissed with prejudice as a sanction for Pal's discovery conduct. *Pal v. Canepari*, No. 3:20-CV-00013 (MPS/TOF), 2021 WL 8323639, at *14 (D. Conn. Mar. 15, 2021), *report and recommendation adopted*, 2021 WL 8362143 (D. Conn. May 27, 2021).

I decline, however, to restrict discussion of the facts that supported those dismissed claims to the extent those facts are relevant to any surviving claims or provide necessary background. For example, Pal may not argue to the jury that officers used excessive force in the manner in which they put her in the police cruiser because the Court previously determined that the officers were entitled to qualified immunity on that claim. *Pal v. Canepari*, 2023 WL 2712371, at *18. However, Pal may testify as to her experience of being placed in the police cruiser. Similarly, although Pal may not argue to the jury that she was illegally transported to the hospital, Pal may testify as to her experience of being transported to the hospital.

I intend to offer the below limiting instruction—subject to any comments or proposed revisions from the parties—immediately before the jury hears evidence regarding the facts giving rise to the now-dismissed claims.

> Members of the jury, as I explained to you at the beginning of trial, one of Ms. Pal's claims is that Wilton Police Department officers Canepari, Harris, and Baker violated her right to be free from excessive force in the manner in which they handcuffed her on May 5, 2018. You are going to also hear evidence concerning other interactions between Ms. Pal and these defendants that occurred both before and after she was handcuffed. You will hear evidence that Canepari, Harris, and Baker visited Ms. Pal's home after a 911 call on May 5, 2018, that they entered her home, that they handcuffed her, and that they called an ambulance to take her to Norwalk Hospital. This evidence has been admitted for the limited purpose of giving you a full picture of what occurred among these parties on May 5, 2018, and helping you understand the information that Canepari, Harris, and Baker had at the time that Ms. Pal was held in handcuffs so that you can evaluate Ms. Pal's claim that Canepari, Harris, and Baker violated her rights in the manner in which they handcuffed her.
>
> You may not consider this evidence for any other purpose. You might agree or disagree with the decision to handcuff Ms. Pal in the first instance, as well as any of the other decisions made by these officers in the time before and after Ms. Pal was in handcuffs. But you should not let those opinions substitute for analyzing the claim actually before you in this trial. I will repeat again: you should focus on whether, in applying handcuffs, the amount of force used was in violation of the law.

**B. Prior Interactions with Wilton Police Officers**

Defendants seek to prevent Pal from offering "testimony, evidence, argument or comment on prior interactions with the WPD, its employees, or prior litigation against such entities and parties." ECF No. 357, at 13. I understand Defendants to argue that Pal should be prevented from attempting to bolster her claims against Canepari, Harris, and Baker regarding their conduct on May 5, 2018 by reference to her allegations that a different set of Wilton police officers mistreated her on April 29, 2015. Pal responds that she should be able to present evidence regarding *Pal v. Cipolla*, including Canepari's previous interactions with Pal. ECF No. 399, at 8-9. Pal contends that the jury should be permitted to evaluate the motives of the Defendants and understand why she reacted to their presence on May 5, 2018 in the way that she did. In addition to implicating testimony and argument at trial, this dispute implicates Plaintiff's exhibits 12-15, which are surveillance videos showing her visit to the Wilton Police Department on March 20, 2017.

I begin by identifying the ways in which this evidence is relevant to triable issues. I then consider Defendants' objections to the specific pieces of anticipated evidence and testimony set forth in Defendants' briefing. But even as I conclude that certain aspects of these pre-2018 interactions are relevant to the triable issues in this case, I will not allow a trial within a trial regarding what occurred in 2015. I will therefore place reasonable limits on the length of testimony related to these events. Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."); Fed. R. Evid. 611 (stating that "[t]he court should exercise reasonable control over the mode and order of examining witnesses and

presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."); *see, e.g.*, *United States v. Muhanad Mahmoud Al-Farekh*, 956 F.3d 99, 114-15 (2d Cir. 2020) ("Trial judges have broad discretion to limit the cross-examination of witnesses as appropriate to minimize the risk of harassment, undue prejudice, confusion of issues to be presented to the jury, redundancy of the evidence, or unnecessary delays in the trial. We have thus recognized that district courts have an independent responsibility to ensure that issues are clearly presented to the jury by, for example, imposing reasonable limitations on cross-examination.") (citation modified).

**1. Relevance**

The parties dispute whether Canepari, Baker, and Harris's subjective motive is relevant to any triable claims or defenses.

As the Court held at summary judgment, the jury will analyze Pal's claim of excessive force in violation of the Fourth Amendment using an objective standard, as informed by the facts and circumstances confronted by the Baker, Canepari, and Harris. *Pal v. Canepari*, 2023 WL 2712371, at *14 (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)); *see also Dancy v. McGinley*, 843 F.3d 93, 111 (2d Cir. 2016) ("Because subjective intentions are irrelevant to this [Fourth Amendment] analysis, we do not assess what was motivating this police officer when he decided to stop Elting.") (citation modified). Thus, the officers' subjective motivations are not relevant to the jury's assessment of whether Pal has proven her excessive force claim.

But Pal seeks punitive damages on her excessive force claim. ECF No. 199, at 75. "A jury may 'assess punitive damages in an action under § 1983 when the defendant's conduct is

shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *DiSorbo v. Hoy*, 343 F.3d 172, 186 (2d Cir. 2003) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Thus, evidence that Canepari, Baker, or Harris intended to harm her or were motivated by ill will is relevant to Pal's claim that she is entitled to punitive damages for the manner in which these Defendants handcuffed her.

Pal also alleges that Canepari defamed her by stating in the § 17a-503(a) request that Pal "repeatedly told officer she would 'fucking kill you.'" *Pal v. Canepari*, 2023 WL 2712371, at *24. As the Court recognized previously, Canepari's statement may be subject to a qualified privilege. *Id.* at *25; *Stonick v. Delvecchio*, 438 F. Supp. 3d 154, 171 (D. Conn. 2020) ("Statements made in connection with police investigations are generally not actionable because they are protected by qualified privilege."). But "a qualified privilege in a defamation case may be defeated if it can be established that the holder of the privilege acted with malice in publishing the defamatory material." *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 630 (2009). One way to overcome the qualified privilege is by showing that the publisher of a defamatory statement acted with "malice in fact, i.e., publication of a false statement with bad faith or improper motive." *Id.* Thus, Canepari's motive in completing the § 17a-503(a) request is relevant to the question of whether any defamatory statement is privileged.

In a supplemental objection and offer of proof, Pal posited that her prior experiences with other Wilton police officers are relevant to the jury's understanding of why she reacted in fear when Canepari, Baker, and Harris arrived at her home on May 5, 2018. ECF No. 455, at 11. Pal contends that "[a] jury cannot fairly evaluate a person's conduct while being forcibly transported by police and EMT personnel if the jury is permitted to hear the manifestation of

her fear but prohibited from hearing the contemporaneously recorded reason for that fear." *Id.* But the jury will not be asked to evaluate whether Defendants erred in dispatching officers in response to the 911 call, handcuffing Pal in the first instance, or determining that she should be transferred to Norwalk Hospital. Rather, the jury will be instructed that Pal cannot recover based on those decisions.

Pal sought medical treatment following the 2015 incident, and her medical history has relevance to damages and causation. *See, e.g.*, *Tardif v. City of New York*, 344 F. Supp. 3d 579, 605 (S.D.N.Y. 2018) (declining to preclude evidence of plaintiff's medical history because it was probative of causation and damages). I will consider issues relating to the 2015 incident and Pal's medical treatment in a separate ruling.

### 2. Application to Disputed Evidence

#### a. References in Videos and Transcripts to *Pal v. Cipolla*

Defendants urge me to omit or redact from the videos and any accompanying transcripts Pal's references to *Pal v. Cipolla* and the allegations giving rise to that lawsuit. As the Court recounted in its summary judgment ruling, the body-worn camera footage captures Pal saying to Canepari, Baker, and Harris: "Hey bunch of assholes," "you know these people already sexually assaulted me," and "There's a lawsuit pending." *Pal v. Canepari*, 2023 WL 2712371, at *4. Tornello's body-worn camera recorded an extensive discussion with Pal, where Pal recounted "her allegations concerning the 2015 incident," which led Tornello to react with "shock" because of Tornello's view that Cipolla "seemed like such a nice person." *Pal v. Canepari*, 2023 WL 2712371, at *8; *see also* Defs.' Ex. 509 (manually filed).

Based on the present record, I decline to redact or excise from evidence Pal's remarks that reference her prior lawsuit, or the allegations underlying the prior lawsuit, because doing

so would deprive the jury of the context regarding Pal's reaction to officers arriving at her home.[4] *See* Fed. R. Evid. 106. In addition, as the Court noted in its ruling at summary judgment, the content of Pal's conversation with Tornello is relevant to the jury's evaluation of Pal's claim that she was sexually assaulted in the ambulance by Kennedy or Bryson on May 5, 2018. *Pal v. Canepari*, 2023 WL 2716595, at *7. For this reason, I decline to exclude any aspect of the body-worn camera footage where Pal described a prior lawsuit or her allegation that she had been sexually assaulted during the 2015 incident. Thus, to the extent Defendants move to preclude those references that are captured in videos and transcripts from May 5, 2018, that motion is denied.

I will, however, give a cautioning instruction that explains the limited ways in which the prior lawsuit is relevant to the jury's deliberations. I include this proposed instruction below:

> Members of the jury, I remind you that your obligation is to consider whether Defendants are liable to the plaintiff because of their actions and inactions on May 5, 2018. In listening to the evidence in this case, you may hear references to another lawsuit brought by the plaintiff against several Wilton police officers. The police officers who were defendants in that previous case are not the same police officers who are defendants in the present case. That previous lawsuit was called *Pal v. Cipolla*; it related to events that occurred before May 5, 2018.
>
> You may consider evidence of the prior lawsuit only for a limited purpose. In particular, you may consider whether any of the defendants had knowledge on

[4] Pal referenced the rule of completeness for the first time in her supplemental objection. ECF No. 455, at 21. I agree with Pal that omitting references within the body-worn camera footage to past allegations would tend to run afoul of the rule of completeness. *United States v. Thiam*, 934 F.3d 89, 96 (2d Cir. 2019) ("The rule of completeness doctrine under Rule 106 of the Federal Rules of Evidence provides that an 'omitted portion of a statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion.'") (quoting Fed. R. Evid. 106).

> May 5, 2018 of Ms. Pal's previous lawsuit and, if so, whether that knowledge motivated any of their actions on May 5, 2018.
>
> You may not consider the merits of the prior lawsuit. You cannot hold it against the plaintiff that she previously sued police officers. Similarly, you cannot hold it against the Defendants in the present case that other Wilton police officers were previously sued. You cannot allow the fact that the plaintiff previously claimed she was mistreated by different police officers to influence your consideration of whether Plaintiff has proven her claims against these Defendants based on what occurred on May 5, 2018.

**b. Plaintiff's Exhibits 12-15**

Plaintiff's exhibits 12-15 are surveillance videos from Pal's visit to the Wilton Police Department on March 20, 2017. *See* Pl.'s Ex. 12-15 (manually filed). Pal contends that the surveillance videos depict "Canepari, Robert Cipolla and Scott Sears . . . threatening Plaintiff and attempting to extort money from Plaintiff." ECF No. 382, at 26.[5] The videos have no audio.

As I have noted, Canepari's subjective motive toward Pal is relevant to her entitlement to punitive damages and Canepari's contention that he is entitled to a qualified privilege from defamation for any false statements recorded in the § 17a-503(a) request. Pal is similarly permitted to explore what Defendants knew about her when they arrived at her house because that knowledge is relevant to the jury's determination of whether Defendants' use of force was objectively reasonable under the circumstances.

---

[5] This appears to be a reference to a dispute over how Pal would satisfy a bond related to her then-ongoing criminal proceedings. The Court described this interaction as follows: "According to Pal, despite being aware that the charge was subject to a non-surety bond, Cipolla insisted that Pal give him $5000 in cash for the bond and told her that she would not be able to leave until she did so. After Pal's attorney contacted the State's Attorney, Cipolla was instructed not to demand cash for the bond." *Pal v. Cipolla*, 2020 WL 6881455, at *9 (record citations omitted).

I will allow Pal to show portions of exhibits 12-15 subject to the limitations discussed below. The videos tend to make it more probable that Canepari recognized Pal when he arrived at her home on May 5, 2018. Moreover, the videos are probative (even if only marginally so) of Pal's contention that Canepari was considering Pal's history with other Wilton police officers when he arrived at her home. In light of the fact that Pal served a summons on three Wilton police officers on May 4, 2018, evidence of what Canepari knew of Pal's history with other Wilton police officers is relevant to assessing Canepari's motive.

I will, however, impose limitations on this evidence. First, I will consider any hearsay objections asserted by Defendants regarding Pal's description of what was said to her on March 20, 2017. Second, because the four videos total nearly 35 minutes in length and I conclude that anything more than ten minutes of video would be overly cumulative given the probative value of this evidence, I will require Pal to designate a portion of the videos not exceeding ten minutes that she seeks to show the jury. Pal shall file a notice of the portions of the videos that she seeks to show the jury no later than the day before she introduces these videos into evidence. *See* Fed. R. Evid. 403.

**c. Other Interactions with Wilton Police Officers**

At the second trial management conference, Pal announced her intent to testify to the fact that "Scott Sear, who is not a defendant in this matter, made an attempt to contact me on the day when the – the morning of [May 5, 2018]." ECF No. 436, at 32. Defendants objected to any such inquiry. *Id.* at 35.

I will address objections related to descriptions of Pal's contacts with Wilton police officers other than the parties to this action in the context of trial. As a general matter, I will preclude Pal from eliciting testimony related to her interactions with Wilton police officers

who were not involved in the events of May 5, 2018 unless Pal can show such testimony is relevant to her claims. I will also preclude Pal from eliciting evidence concerning misconduct by police officers who are not parties to this action unless Pal can show that it is relevant to any of her claims. Such testimony is also subject to possible preclusion under Fed. R. Evid. 403. *See, e.g.*, *Chapdelaine v. Desjardin*, 180 F.4th 454, 467-68 (2d Cir. 2026) (holding that district court did not abuse its discretion in excluding from evidence report of unrelated misconduct by police officer at trial on excessive force claim). To the extent Pal wishes to explore these matters in her direct testimony or in examining any witness, she shall provide me with notice during a break in trial so that I can issue an advance ruling outside of the hearing of the jury.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion in Limine (ECF No. 398) is granted in part and denied in part.

**SO ORDERED.**

New Haven, Connecticut
September 3, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge