UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NEELU PAL, *Plaintiff* | : | |
| v. | : | 3:20-CV-13 (SFR) |
| MARK CANEPARI, *ET AL.*, *Defendants*. | : | |

**SECOND AMENDED PRE-TRIAL JURY INSTRUCTIONS**

I now will provide you with preliminary instructions to guide you in your important function as jurors. These instructions are not a substitute for the jury instructions you will receive at the conclusion of the case. These instructions now are designed simply to assist you with your consideration of the case.

This is a civil lawsuit. The party who brings a civil lawsuit is called the plaintiff. In this case, the Plaintiff is Neeru Pal.

A party who is sued is called a defendant. In this case, Plaintiff asserts claims against three sets of defendants: (1) the Wilton Defendants, including Mark Canepari, Arnault Baker, Brandon Harris, and the Town of Wilton; (2) the Ambulance Defendants, including Joseph Bryson, James Drew Kennedy, and Wilton Volunteer Ambulance; and (3) the Hospital Defendants, including, Harry Downs, and Norwalk Hospital.

You may hear references to "counsel" or "attorneys" or "lawyers" during the course of this trial. These words mean the same thing. You may hear references to "the Court." When someone refers to "the Court" they generally mean the judge presiding over the case. You also

will hear the words "instruct" or "instruction;" this is a direction or order from me that you must follow.

It is your duty to find the facts having considered all of the evidence in the case. The evidence from which you are to determine what the facts are consists of the following:

a) The sworn testimony of witnesses on both direct and cross-examination, regardless of who called the witness;

b) Any exhibits received into evidence; and

c) Any facts to which the attorneys have agreed or stipulated.

Certain things are not evidence and must not be considered by you. I will list them for you now:

First, all statements, arguments, and questions by lawyers, and questions that I may ask are not evidence. Obviously, answers are evidence. In this case, the plaintiff, Ms. Pal, is representing herself. Because Ms. Pal is acting as her own lawyer, you will hear her speak at various times during the trial. She may make an opening statement and closing argument and may ask questions of witnesses, make objections, and argue legal issues to the court. I want to remind you that when Ms. Pal speaks in these parts of the trial, she is acting as her own advocate, and her words are not evidence.

Second, objections to questions are not evidence. The parties make objections when they believe evidence being offered is inadmissible under the Federal Rules of Evidence.

You should not be influenced by the objection or by the Court's ruling on it. If an objection is "sustained" or "granted," this means the objection is correct, the evidence is inadmissible, and you must ignore the question that was asked and any answer that may have

been given. If the objection is "overruled" or "denied" or I say "I will allow it," this means the objection is not correct, and you should treat the answer to the question like any other answer.

If you are instructed by me that some evidence, whether it is an exhibit or testimony, is received for a limited purpose only, you must follow that instruction and consider that evidence only for the specified purpose. If I instruct you that evidence is "stricken," that means evidence initially received must not be considered by you.

Third, on occasion, when there is an objection, I will call the lawyers and the plaintiff up to the side of the bench for a sidebar to understand the reasons for their objections out of your hearing. We will try to keep the sidebars to a minimum by taking up such objections during your breaks, but you should understand that they may be necessary.

Fourth, any testimony that I have excluded, stricken or told you to disregard is not evidence and must not be considered.

Fifth, anything you may have seen or heard outside the courtroom is not evidence and must be disregarded. You are to decide the case solely on the evidence presented here in this courtroom.

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of a witness about what the witness saw or heard or did. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist, even though there was no direct proof of that fact. The word "infer"—or the expression "to draw an inference"—means to find a fact exists, even though it has not been proven directly, in other words, to find a fact exists based on proof of another fact.

For example, assume that when you came into the courthouse this morning the sun was shining and it was a nice day. As you were sitting here, someone walked in with an umbrella

that was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining. Direct evidence of rain, on the other hand, would be someone's actual observation of raindrops coming down from the sky.

An inference may be drawn only if it is reasonable and logical, not if it is speculative. You are allowed to draw logical inferences from facts that you find to have been proven, but you may not go outside of the evidence to find the facts, nor can you resort to guesswork or conjecture. To aid you in better understanding this, in the rain example I used a moment ago, while you could infer from the facts I provided that it had rained, you could not also infer that there was a thunderstorm, without additional evidence. In other words, you must avoid resorting to speculation, conjecture, or guesswork to determine critical facts in this case.

I will give you further instructions on these as well as other matters at the end of the case, but keep in mind that you may consider circumstantial evidence as well as direct evidence, and it is for you to decide how much weight, if any, to give to either.

You, the jury, alone decide the credibility of witnesses and the weight to be given their testimony. No fact is, of course, to be determined simply by the number of witnesses testifying for or against it. It is the quality, not the quantity, of evidence that controls. In considering the weight and value of the testimony of any witness, you may take into consideration the appearance, attitude and behavior of the witness, the interest of the witness in the outcome of the case, if any, the inclination of the witness to speak truthfully or not, the probability or improbability of the witness' statements, and all other facts and circumstances in evidence.

You should test the evidence they give by your own knowledge of human nature and of the motives that influence and control human action.

In sum, you are to assess a witness' testimony using the same considerations and the same sound judgments and common sense you apply to the questions of credibility that present themselves in important matters in your daily life. It will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of any witness' testimony to accept or reject.

The testimony of a law enforcement officer or other governmental employee is entitled to no special or exclusive consideration. Any officer or governmental employee who takes the witness stand subjects his or her testimony to the same examination and the same tests that any other witness does. And you should not believe or disbelieve them merely because they are employed as law enforcement officers or other governmental employees. You should recall their demeanor on the stand, their manner of testifying, and the substance of their testimony, and you should weigh and balance it just as carefully as you would the testimony of any other witness. Law enforcement officers and other people employed by the Government do not stand in any higher or lower station in the community than other persons, and their testimony is not entitled to any greater or lesser weight.

At the same time, it is quite legitimate for the plaintiff to attack the credibility of a law enforcement witness on the grounds that this testimony may be colored by a personal or professional bias or an interest in the outcome of the case. Evidence that a witness is biased, prejudiced, or hostile requires you to view that witness's testimony with caution, to weigh it with care, and to subject it to close and searching scrutiny. It is your decision, after reviewing

all the evidence, whether to accept the testimony of the law enforcement or governmental witness and to give to that testimony whatever weight, if any, you find it deserves.

Regardless of your ultimate decision about the case, all parties in this case are entitled to a full and fair hearing. I instruct you to listen to assess the evidence fairly and impartially. The parties are entitled to a trial free from prejudice or bias. It would be improper for you to consider, in reaching your decision, any personal feeling you may have about the race, religion, national origin, gender, sexual orientation, gender identity, economic circumstances, or age of the plaintiff, the defendants, any witness, or anyone else associated with this case. Do not allow yourself to be influenced by personal likes or dislikes, sympathy, prejudice, fear, public opinion or biases.

I will give you further guidelines for determining the credibility of witnesses at the end of the case.

**Burden of Proof**

The Plaintiff has the burden of proving her case by what is called the preponderance of the evidence. That means that, in order to prevail, the Plaintiff must produce evidence that leads you to believe that her claims are more likely true than not.

On this point, it helps to visualize a scale. Imagine that you place on one side of the scale the evidence that you find credible, relevant, and supportive of the plaintiff's position on a particular issue, and place on the other side of the scale the evidence that you find credible, relevant, and supportive of the defendant's position on that issue. If the scales tip in favor of the plaintiff, even a little bit, then the plaintiff has carried its burden of proof. But if the scales are evenly balanced, or if the scales tip in favor of the defendant, even a little bit, then the plaintiff has not carried its burden of proof. This does not mean that the party who calls the

most witnesses or offers the most exhibits wins. This is not a numbers game. Rather, it means that the party who offers the evidence that you find most credible and persuasive prevails. Some of you may have heard of a standard of proof called beyond a reasonable doubt. That requirement does not apply in a civil case like this one. So, you must put it out of your mind.

**Self-Represented Party**

The Plaintiff is representing herself in this lawsuit. This fact must not affect your consideration of the case. Self-represented parties and parties represented by an attorney are entitled to the same fair consideration.

I will now provide a brief introduction of Ms. Pal's legal claims against the defendants and the elements she must prove to establish those claims. I provide this preliminary explanation only to orient you to the case, and so you do not need to memorize anything I say about the claims now. In fact, it is possible that you may only be asked to deliberate upon some of these claims, depending on actions that might occur during the trial. I will provide you with more detailed instructions, both orally and in writing, regarding each of the claims you must consider at the end of the trial in my final instructions.

I believe everything that I'm going to tell you now is consistent with the final instructions that I will give you at the end of the trial. But if you have any doubt, you should rely on my final instructions to you. It is those instructions that will govern your deliberations in this case.

Ms. Pal brings five claims against the defendants. Not all of her claims apply to all of the defendants.

First, Ms. Pal brings a claim of excessive force in violation of the Fourth Amendment against Defendants Canepari, Harris, and Baker. Specifically, Ms. Pal claims that Defendants

Canepari and Harris utilized excessive force in allegedly applying handcuffs that were too tight, further tightening the handcuffs in response to her complaints of pain, and twisting her arms to cause pain while she was handcuffed. Ms. Pal alleges that Defendant Baker failed to intervene to stop the alleged used of excessive force. To make out a claim of excessive force, Ms. Pal must show by a preponderance of the evidence that the amount of force used was more than what a reasonable officer would have employed under similar circumstances.

Second, Ms. Pal alleges that Defendants Canepari, Harris, Baker, Bryson, Kennedy, and Downs committed assault and battery. Specifically, Ms. Pal claims that Defendants Canepari, Harris, and Baker assaulted or battered her in connection with the handcuffing; and she claims that Defendants Downs, Bryson, and Kennedy assaulted or battered her inside of an ambulance. To make out a claim of assault, Ms. Pal must show by a preponderance of the evidence: one, that these Defendants' actions put Ms. Pal in imminent apprehension of a harmful or offensive contact; and, two, that these Defendants' actions were done intentionally, wantonly, or without the exercise of due care. To make out a claim of battery, Ms. Pal must show by a preponderance of the evidence: one, that these Defendants made harmful or offensive contact with Ms. Pal; and, two, that these Defendants' actions were done intentionally, wantonly, or without the exercise of due care.

Third, Ms. Pal alleges that the above referenced conduct of Defendants Canepari, Harris, Baker, Bryson, Kennedy, and Downs constituted intentional infliction of emotional distress. To make out this claim, Ms. Pal must establish by a preponderance of the evidence four elements: one, that these defendants intended to inflict emotional distress or that the defendants knew or should have known that emotional distress was the likely result of their conduct; two, that the conduct was extreme and outrageous; three, that the conduct caused Ms.

Pal to receive emotional distress; and, four, that the emotional distress sustained by Ms. Pal was severe.

Fourth, Ms. Pal alleges that the above-referenced conduct of Defendants Canepari, Harris, Baker, Bryson, Kennedy, and Downs constituted negligent infliction of emotional distress. To make this claim, Ms. Pal must establish by a preponderance of the evidence three elements: one, that these defendants engaged in conduct that they should have realized involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily injury; two, that the conduct caused emotional distress to Ms. Pal; and three, that the distress was of such a nature as might result in illness or body harm.

Fifth, Ms. Pal alleges that Defendant Canepari defamed her by falsely stating in an evaluation request that Ms. Pal "repeatedly told officer she would 'fucking kill you.'" Ms. Pal alleges that Defendant Downs defamed her by falsely stating in his report that Pal was "arrested for assault" and that Defendant Byson defamed her by falsely stating in his report that Ms. Pal was "kicking at police." Finally, Ms. Pal alleges that Defendants Bryson, Downs, and Kennedy defamed her by falsely telling Norwark Hospital staff that Pal had "assaulted police" and "was going to be arrested."

Ms. Pal asserts her claims directly against all of these individual Defendants, and contends that the Town of Wilton, Norwalk Hospital, and Wilton Volunteer Ambulance are liable for any wrongful conduct by their employees.

At the close of evidence, I will instruct you further about the law relating to all of these claims as well as defenses.

Defendants deny all these claims and assert that they acted lawfully at all times.

PROCEDURE

The trial will proceed in the following order:

FIRST: Ms. Pal will make an opening statement. Then, Defendants' attorneys will each make opening statements. What Ms. Pal and the lawyers say in their openings is not evidence; rather it is a prediction or roadmap by the advocates of why he or she expects the evidence will be. You should not decide anything about this case on the basis of the opening statements which, like these preliminary instructions, are intended merely to orient you to the case.

SECOND: After opening statements, Ms. Pal will present her witnesses, and the Defendants may cross-examine them. Then the Defendants will present any witnesses they have, and the Plaintiff may cross-examine them.

THIRD: After the close of the evidence, I will give you detailed instructions on the law.

FOURTH: After my instructions, Ms. Pal and Defendants will make their closing arguments. Remember, what is said in closing argument is not evidence. The arguments by the advocates are designed to summarize and interpret the evidence and suggest inferences that may be drawn from the evidence.

FINALLY: I will make some brief concluding remarks, and then you will retire to consider your verdict.

I have some additional instructions, some of which I provided to you after you were selected to be on this jury.

First, during the trial you are not to discuss the case with anyone, including other members of the jury, or permit anyone to discuss it with you. Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case. This includes "texting" and using the Internet: Do not blog about this case or about your duty as a juror. Do not use "X" (also known as "Twitter"), "Facebook," TikTok, or any other service to post updates or opinions about the case, either now or during the trial. Do not text anyone using your cellphone, or any other communications device, about any of your activities or opinions regarding this case.

Second, while serving on the jury, please do not speak with any of the parties or their attorneys, any witnesses or with me—either about the case or about any other subject. I will tell you that if you find yourselves in the same elevator or hallway as the lawyers they will likely ignore you. I'm instructing you to do the same. This may seem an odd instruction. But, by imposing such a rule, the Court and the parties are assured of your absolute impartiality as jurors. If, however, you have a question or concern regarding your service, please write out the question or message, give it to the courtroom deputy, clerk, or court security officer. I will try to respond promptly. I should be clear here—you should not ask questions about the evidence or testimony you have heard or the trial itself. You will have the ability to ask such questions during your deliberations but not while the evidence is being submitted during the trial. Although you should not talk at all with any of us, you may certainly talk among yourselves during breaks and the like. Just be sure your conversations are not about anything having to do with the case.

Third, do not read or listen to anything relating to this case in any way. That includes not watching any internet or television accounts or reading any newspaper articles about the case. If anyone should try to talk to you about it, bring it to my attention promptly.

Fourth, do not do any research or make any investigation about the case on your own. This includes internet research. Do not conduct any internet searches whatsoever (such as "Googling" or using "Wikipedia") to find information about anyone or anything involved with this case, including the Defendants, the witnesses, or the attorneys. All the information you should consider will be presented to you in this courtroom during the course of this case. Do not look elsewhere for any other information.

Fifth, do not form any opinion until all the evidence is in, you have heard my instructions on the law, and heard closing arguments of counsel. Bring an open mind into your deliberations at the end of the case. I remind you again to keep an open mind until you are engaged in deliberations.

You may take notes during the course of the trial. These notes must be left in the jury room during all recesses and should not be brought home at night or at the conclusion of this case. Any notes that you take should be used only as memory aids; do not treat your notes as more accurate than your independent recollection of the evidence. If you do not take notes, you should rely on your own recollection of the proceedings and should not be unduly influenced by the notes of other jurors.

Starting tomorrow, and for each full day of trial, we will start at 9:15 a.m. and go as long as 4:15 p.m., although you should report to the courthouse by 9:00 a.m. At around 12:15, we will take a one-hour lunch break. We will take 15 minute breaks in the morning and the afternoon.

I will do my best to keep to this timeline, but I ask for your patience if any testimony runs over.

Thank you for your attention.

[OPENING STATEMENTS]