UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NEELU PAL, *Plaintiff* v. MARK CANEPARI, *ET AL.*, *Defendants.* | : | 3:20-CV-13 (SFR) |

# PROPOSED JURY INSTRUCTIONS


INTRODUCTION ....................4

I. PART I: GENERAL INSTRUCTIONS ....................5

A. Role of the Court ....................5

B. Instructions To Be Considered As A Whole ....................5

C. Both Sides Entitled to Full and Fair Hearing ....................6

D. Sidebar Conferences ....................6

E. Objections and Rulings ....................7

F. Duties of the Jury ....................8

G. "Prove," "Find," and "Establish" ....................9

H. Burden of Proof: Preponderance of the Evidence ....................10

I. Forms of Evidence ....................11

J. What Is Not Evidence ....................12

K. Direct and Circumstantial Evidence ....................14

L. Inference Defined ....................15

M. Witness Credibility ....................15

N. Impeachment of Witnesses ....................16

O. Uncontradicted Testimony ....................17

P. Testimony of Law Enforcement Officers and Government Employees ....................17

Q. Expert Testimony ....................18

R. Party's Self-Representation ....................19

PART II: PLAINTIFF'S CLAIMS ....................20

A. The Claim for Deprivation of Rights Under Color of Law ....................21

1. The First Element: Acting Under Color of State Law ....................22

2. The Second Element: Deprivation of a Constitutional Right ....................22

3. The Third Element: Proximate Cause ....................25

4. Failure to Intervene ....................25

B. Assault and Battery ....................26

1. Assault and Battery as to Wilton Police Defendants ....................27

C. Intentional Infliction of Emotional Distress ....................27

D. Negligent Infliction of Emotional Distress ....................28

E. Claim for Negligence Against the Town of Wilton ....................30

F. Governmental Immunity ....................32

G. Comparative Negligence ....................34

H. Good Samaritan Law ....................35

I. Libel, Defamation, and Defamation Per Se ....................36

1. General Instructions ....................36

2. Libel Per Quod ....................37

3. Libel Per Se ....................38

4. Slander Per Se ....................38

5. Damages for Libel Per Quod ..... 39

6. Privilege ..... 39

J. Vicarious Liability ..... 41

PART III: DAMAGES ..... 41

A. General Instructions on Damages ..... 42

B. Compensatory Damages ..... 43

C. Nominal Damages ..... 45

D. Punitive Damages ..... 45

E. Rule Against Double Recovery ..... 47

PART IV: FINAL INSTRUCTIONS ..... 47

A. Note Taking ..... 47

B. Unanimous Verdict ..... 48

C. Cell Phones And Personal Devices ..... 48

D. Foreperson ..... 48

E. Verdict Form ..... 49

F. Final Instructions ..... 50

# INTRODUCTION

Members of the jury, you now have heard all of the evidence in the case. I now will instruct you concerning the law that applies in this case. The parties will then give you their final arguments, and after some additional instructions by me, you will return to the jury room to deliberate consistent with my instructions.

First, however, I want to thank you for the time and attention you have devoted to this trial. Jury service is rarely convenient, but without you, justice could not be done in this case.

It will take some time for me to read these instructions to you, but it is important that you listen carefully and pay close attention. You have been provided with a copy of my instructions so that you can read along as we go.

My instructions will be delivered in three parts:

First, I will provide some instructions on general rules that define and control the role of the Court and the duty of the jury; second, I will go over the issues in this case and set out the specific elements that you must find based on the evidence at trial; and third, I will give you some rules and guidelines for your deliberations.

Before we begin, I ask you to review the document that each of you found at your seat when you entered a moment ago—namely, the Verdict Form. After I have given these instructions, you will go back into the jury room to deliberate. You will have with you the following: the original Verdict Form (all of your individual copies will be collected before you deliberate), the original exhibits, your individual copies of these instructions, and any personal notes that you may have taken. At the conclusion of your deliberations, you will use the Verdict Form to report your verdict to the Court and the parties.

# I. PART I: GENERAL INSTRUCTIONS

## A. Role of the Court

As judge, I perform basically two functions during the trial. First, I decide what evidence you may consider. You have heard me doing that throughout the trial. Second, I instruct you on the law that you are to apply to the facts in this case. I gave you some preliminary instructions before trial began, but it is now—at the close of evidence—that the final instructions governing your deliberations are given, so please be patient and listen closely. I believe that everything I am going to tell you is consistent with the preliminary instructions I gave you at the start of the trial, but if you have any doubt, you should not rely on anything different I may have said in the preliminary instructions. The instructions I am now giving you must guide your deliberations in this case.

It is your duty to take the law as I will give it to you and to apply it to the facts as you determine them. You must take the law as I give it to you and if any attorney, any party, any witness, or any exhibit has stated a legal principle different from one that I state to you in my instructions, it is my instructions that you must follow. Also, you must not substitute your own notions or opinions of what the law is or ought to be for what I tell you the law is in my instructions.

## B. Instructions To Be Considered As A Whole

I may repeat certain parts of these instructions. That does not mean that those parts should be emphasized. You should not single out any one part of my instructions and ignore the rest. Instead, you should consider all of the instructions as a whole and consider each instruction in light of all the others.

The order in which I give you instructions does not indicate their relative importance. Do not read into these instructions, or into anything I have said or done, as any suggestion from me about what verdict you should return—that is a matter for you alone to decide.

I should also point out to you that, although you have been given a copy of the instructions to follow as I deliver them, if I say aloud anything at all different from what is written, you must follow what I say here in court.

### C. Both Sides Entitled to Full and Fair Hearing

Regardless of your ultimate decision about the parties' claims, all parties in this case are entitled to a full and fair hearing. The parties are entitled to a trial free from prejudice or bias. Our justice system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence, regardless of the final outcome of the case.

It is your duty, therefore, to give careful thought to every issue set forth by these instructions, regardless of any general feeling that you may have about which party is right. In deciding the facts or applying the law as I have given it to you, you must not be swayed by bias or prejudice for or against any party. You must not be swayed by your personal opinions about any of the issues raised in this trial. You should not be swayed by sympathy. You should be guided solely by the evidence presented during trial and the law that I give you, without regard to the consequences of your verdict. If you let your sympathy for one side or another interfere with your clear thinking, there is a risk that you will not arrive at a just verdict.

### D. Sidebar Conferences

There have been occasions in this case when one of the attorneys or the self-represented party asked to confer with the Court out of your hearing. In such situations you, the jury, should not feel slighted. You are not to speculate about what may have been discussed. Likewise, you

should have no resentment towards the person who requested a sidebar conference. In the interests of justice and to expedite a trial, it is perfectly proper that conferences be held right here at this bench between counsel and the Court, because this avoids the inconvenience of having the jury file out and file back in again and prevents the jury from becoming confused on technical legal matters.

**E. Objections and Rulings**

Our courts operate under an adversary system in which we believe that the truth will emerge through the competing presentations of adverse parties. It is the role of an attorney and any party representing herself to press as hard as they can for their respective positions. In fulfilling that role, they have not only the right, but the obligation to make objections to the introduction of evidence they feel is improper. You should not show any prejudice against an attorney, his client, or a party representing herself because he or she objected to the admission of evidence or the phrasing of a question, or asked the Court to rule on an objection or the propriety of a question. The application of the rules of evidence is not always clear, and lawyers and parties often disagree about them. It has been my job as the judge to resolve these disputes during the course of the trial.

It is important for you to realize, however, that my rulings on evidentiary matters have nothing to do with the ultimate merits of the case, and are not to be considered as points scored for one side or the other. You are not to concern yourself with why a lawyer or party made an objection or why I ruled on it in the manner that I did. You should draw no inference from the fact that someone objected to evidence. Nor should you draw any inference from the fact that I might have sustained or overruled an objection. My rulings on objections have nothing to do with the merits of the case or with the credibility of the witnesses.

If I have sustained an objection to a question asked of a witness, you must disregard the question entirely, and may draw no inference from the question, nor speculate about what the witness would have said if she had been permitted to answer the question. If I have stricken or told you to disregard or ignore an answer, you must not rely on that answer, because it is not evidence. If I have given you a limiting instruction that certain evidence was to be considered by you for a limited purpose only, then you must follow that limiting instruction and use the evidence only for the limited purpose for which it was admitted.

During the course of a trial, one cannot help but recognize the various personalities and styles of attorneys, and, in this case, the self-represented party. But it is important for you as jurors to recognize that this is not a contest about which side made a smoother presentation in the courtroom. Whatever you may think about the conduct of the individuals who presented the case during this trial, you must decide this case solely on the basis of the evidence. Remember, statements and characterizations of the evidence by an attorney or by a self-represented party are not evidence. Insofar as you find their closing arguments to be helpful, take advantage of them, but it is your memory and your evaluation of the evidence and my instructions on the law that count in this case.

**F. Duties of the Jury**

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of witnesses. You resolve any conflicts that may exist in the testimony. You draw whatever reasonable inferences you decide should be drawn from the facts you determine, and you weigh the evidence. No one may invade your province or function as jurors. Because you are the sole and exclusive judges of the facts, I do not mean to indicate, in this charge or at any time during the trial, any opinion as to the facts

or as to what your verdict should be. The rulings I have made during the trial are not any indication of a view of what your decision should be or which party should prevail in this case, because I have no view on those matters.

In order for you to determine the facts, you must rely upon your own recollection of the evidence. In reaching a verdict, you must carefully and impartially consider all of the evidence in the case and then apply the law as I have explained it to you. Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any understanding or interpretation of the law other than the one I give you.

The verdict you reach must be unanimous, that is, agreed upon by each of you. Each of you must decide the case for yourself, but do so only after impartial consideration of the evidence in the case with your fellow jurors.

### G. "Prove," "Find," and "Establish"

Throughout the remainder of my instructions to you, I will use the word "prove" when talking about what the plaintiff must do in order to establish the liability of a defendant. Unless I instruct you otherwise, my use of the word "prove" means "prove by the preponderance of the evidence," even if I do not always repeat those words. Similarly, when I speak of your "finding" various facts, you must find those facts to have been proven by the preponderance of the evidence, even if I simply use the word "find." Likewise, I will speak of the parties "establishing" various facts. Even if I simply use the word "establish," you must find that fact has been established by the preponderance of the evidence.

### H. Burden of Proof: Preponderance of the Evidence

Because this is a civil case, the plaintiff, Ms. Pal, has the burden of proving every disputed element of her claims by a preponderance of the evidence.

To establish a fact by a preponderance of the evidence, the plaintiff must prove that the fact is more likely true than not true. In other words, if you find that the credible evidence on a given issue either favors the defendants or is evenly divided between the plaintiff and the defendants, then you must decide that issue for the defendants. However, if the plaintiff proves that a fact is more likely true than not, even if only slightly more true than not, then you are to find that she has proven the fact by a preponderance of the evidence.

It might be helpful to visualize a pair of balanced scales. Imagine that you put on one scale the evidence you find credible, relevant and supportive of the plaintiff on a particular issue on which she bears the burden of proof, and place on the other scale the evidence you find credible, relevant and supportive of the defendants. If the scales tip in favor of the defendants on that issue, even a little bit, or if the scales are evenly balanced, the plaintiff has not sustained her burden of proof on the issue. But if the scales tip in favor of the plaintiff on that issue, even a little bit, then on that issue she will have sustained her burden of proof.

In determining whether a claim has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have presented them. You may not speculate or guess. A preponderance of the evidence means the greater weight of the evidence; it refers to the quality and persuasiveness of the evidence, not to the number of witnesses or exhibits.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this, and you should not consider or discuss that standard in your deliberations.

## I. Forms of Evidence

Next, I want to discuss with you generally what we mean by evidence and how you should consider it. The evidence from which you are to decide what the facts are comes in one of two forms:

First, there is the sworn testimony of witnesses, both on direct examination and cross-examination, regardless of who called the witness.

Second, there are the exhibits that have been received into the trial record. All of the exhibits that have been admitted into evidence will be with you in the jury room. If an exhibit has been admitted into evidence, it is evidence that can be considered by you regardless of whether any witness referred to the exhibit or testified about it during the trial.

The third form of evidence is any facts and testimony to which all the parties have agreed or stipulated, or that I have directed you to find. A stipulation is an agreement among the parties that a certain fact is true. You should regard such agreed facts as true.

One word about the exhibits that you will have in the jury room. You may notice that certain exhibit numbers have not been used. For example, you may find exhibit number 5 and number 7 but not find number 6. Please do not be concerned about the numerical sequencing of exhibits and do not think that an exhibit is missing. The reason for what would otherwise seem like gaps is that we assigned all of the potential trial exhibits numbers before trial, and then before or during trial, counsel or a party decided not to introduce certain exhibits or certain exhibits were simply marked for identification purposes and then not made full exhibits. We

have checked the exhibits and made sure that you will have all of the exhibits that you should have, so once again do not pay any attention to the numbering or sequencing of the exhibits.

You will see that on some of the parties' exhibits text or other information has been blacked out. Those redactions were either agreed to by the parties or ordered by me so that the exhibits would not contain irrelevant evidence that has no bearing on the issues you are to decide. You should not speculate about what the redacted information might be or what meaning it may at one time have had. The fact that redactions were made, and speculation about the redacted information, shall play no role in your deliberations.

**J. What Is Not Evidence**

It is the witnesses' answers, and not the lawyers' or the self-represented party's questions, that are evidence; even when a self-represented party asks herself questions, it is her answers, and not her questions, that are evidence. At times, a lawyer or a self-represented party may have incorporated into a question a statement that assumed certain facts to be true, and asked the witness if the statement was true. If the witness denied the truth of a statement, and there is no evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because the assumed fact was contained in the lawyer's question.

Objections to questions and arguments are not evidence. As I mentioned, attorneys or the self-represented party may object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by my ruling on it. If the objection is "sustained," ignore the question; if it is "overruled," treat the answer like any other answer.

Testimony that I have ordered stricken, testimony that I have instructed you to disregard or ignore, and testimony that I have excluded are not evidence and may not be considered by you in rendering your verdict.

What Ms. Pal and the defendants' lawyers say in their opening statements and closing arguments, in their comments, objections, and even in their questions is not evidence. What they say in their closing arguments is intended to help you understand the evidence and to reach your verdict. However, if your recollection of the facts differs from the statements made in the closing arguments, you should rely on your memory.

Moreover, what I may have said during the trial or what I may say in these instructions is not evidence, and my rulings on the admissibility of evidence do not indicate any opinion about the weight or effect of such evidence.

It is for you—and you alone—to decide the weight, if any, to be given to the testimony you have heard and to the exhibits you have seen.

Finally, anything you may have seen or heard outside the courtroom or while the Court was not in session is not evidence and must be entirely disregarded. You are to decide the case solely on the evidence or lack of evidence received at trial in this courtroom. I remind you that you must completely disregard any media reports on this matter or any seemingly related matter. Indeed, it would be unfair to consider anything other than what has been presented in this courtroom, since it is not evidence and the parties have not had an opportunity to challenge its accuracy or otherwise explain it. In short, it would be a violation of your oath as jurors to allow yourselves to be influenced in any manner by anything done or said or seen outside of this courtroom.

### K. Direct and Circumstantial Evidence

There are two types of evidence that you may properly use in reaching your verdict. One type of evidence is direct evidence. Direct evidence includes a witness's testimony about something the witness knows by virtue of his or her own senses—something he or she has seen, felt, touched, or heard. For example, if a witness testified that when she left her house this morning, it was raining, that would be direct evidence about the weather.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts. I gave you an example in my preliminary instructions and I'll return to it now. For example, assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Also assume that as you were sitting here, someone walked in with an umbrella that was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to infer that it had been raining.

That is all there is to circumstantial evidence. On the basis of your reason, experience, and common sense, you infer from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence. It is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that your verdict be based on a preponderance of all of the evidence presented.

**L. Inference Defined**

During the trial you may have heard Ms. Pal and the defendants' lawyers use the term "inference," and in their arguments, they may ask you to infer, on the basis of your reason, experience and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists because another fact has been shown to exist.

There are times when different inferences may be drawn from the same facts, whether proven by direct or circumstantial evidence. One party may ask you to draw one set of inferences, while the other party asks you to draw another. It is for you, and you alone, to decide which inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion that you are permitted, but not required, to draw from the facts that have been established by either direct or circumstantial evidence. In drawing inferences, you should use your common sense. The mere process of drawing an inference from the evidence does not change the burden of proof, which remains with the plaintiff throughout the case. Finally, you may not draw any inferences from the mere fact that the plaintiff filed this lawsuit or that the defendants have chosen to defend it.

**M. Witness Credibility**

You have had the opportunity to observe all of the witnesses. It is now your job to decide how believable each witness was in his testimony. You are the sole judges of the credibility of each witness and of the importance of the testimony.

In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

How do you determine truthfulness? You base it on what you have seen and heard. You watched the witness testify. Everything a witness said or did while testifying counts in your determination. How did the witness impress you? Was she frank, forthright and candid, or evasive and edgy as if hiding something? How did the witness appear; what was her demeanor—that is, her behavior, manner, and appearance while testifying? Often it is not what a person says but how he or she says it that convinces us.

You should use all the tests for truthfulness that you would use in determining matters of credibility in your everyday lives. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. You should consider the opportunity the witness had to see, hear, and know the things about which he or she testified; the accuracy of the witness's memory; the witness's candor or lack of candor and intelligence; the reasonableness and probability of the witness's testimony; its consistency or lack of consistency; and its corroboration or lack of corroboration with other credible evidence.

Always remember that in assessing any witness's testimony you should use your common sense, your good judgment, and your own life experience.

**N. Impeachment of Witnesses**

A witness may be discredited or "impeached" by contradictory evidence, by a showing that the witness testified falsely about a material matter, or by evidence that at some other time the witness said or did something inconsistent with the witness's present testimony. It is your

exclusive province to give the testimony of each witness such credibility or weight, if any, as you think it deserves.

If you find that a witness testified untruthfully in some respect, you may consider that fact in deciding the weight you will give to that witness's testimony. Considering that fact and all other relevant evidence, you may accept or reject the testimony of each witness either in whole or in part.

**O. Uncontradicted Testimony**

You are not required to believe testimony even though the testimony is uncontradicted and the witness is not discredited or impeached. You may decide, because of the witness's manner and demeanor or because of the improbability of his testimony or for other reasons, that the witness's testimony is not worthy of belief.

On the other hand, the testimony of a single witness may be enough to convince you of a fact in dispute, if you believe that the witness has truthfully and accurately related what in fact occurred.

**P. Testimony of Law Enforcement Officers and Government Employees**

The testimony of a law enforcement officer or other governmental employee is entitled to no special or exclusive consideration. An officer or governmental employee who takes the witness stand subjects his or her testimony to the same examination and the same tests that any other witness does, and you should not believe or disbelieve them merely because they are employed as law enforcement officers or other governmental employees. You should recall their demeanor on the stand, their manner of testifying, and the substance of their testimony, and you should weigh and balance it just as carefully as you would the testimony of any other witness. Law enforcement officers and other people employed by the government do not stand

in any higher or lower station in the community than other persons, and their testimony is not entitled to any greater or lesser weight.

At the same time, it is quite legitimate for a party to try to attack the credibility of a law enforcement witness—or any witness—on the grounds that this testimony may be colored by a personal or professional bias or interest in the outcome of the case. Evidence that a witness is biased, prejudiced, or hostile requires you to view that witness's testimony with caution, to weigh it with care, and subject it to close and searching scrutiny.

As with every witness, it is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement or other governmental witness and to give to that testimony whatever weight, if any, you find it deserves.

**Q. Expert Testimony**

In this case, I have permitted certain witnesses to express their opinions about matters

that are in issue. A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience, and training. Such expert testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. You should also analyze the expert's training and experience in the particular field; the information available to the expert, including the facts the expert had and the documents available to the expert; the expert's opportunity and ability to examine those things; the expert's ability to recollect the

activity and facts that form the basis for the opinion; and the expert's ability to tell you accurately about the facts and the basis for the opinion. You should ask yourselves about the methods employed by the expert and the reliability of the result. You should further consider whether the opinions stated by the expert have a rational and reasonable basis in the evidence.

You should not, however, accept expert testimony merely because I allowed the witness to testify concerning his or her opinion. Nor should you substitute it for your own reason, judgment, and common sense. The determination of the facts in this case rests solely with you. As with the testimony of any other witness, you, the jury, may decide to accept all, some, or none of the testimony of any expert witness. If you decide that an opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not convincing to you, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion entirely. In other words, an expert's testimony is subject to your review like that of any other witness.

### R. Party's Self-Representation

The plaintiff, Neelu Pal, has decided to represent herself in this case. You should understand that Ms. Pal is not required to have an attorney represent her. Self-represented parties and parties represented by an attorney are entitled to the same fair consideration. You should not draw any inferences or conclusions because she has made this decision. Nor should you guess or speculate as to why she made this choice. You should neither favor nor disfavor a party because that party has an attorney or has chosen to represent herself.

* * *

I will next instruct you on the legal principles that apply to the claims, counterclaims, and affirmative defenses in this case.

**PART II: PLAINTIFF'S CLAIMS**

The plaintiff in this case, Neelu Pal, claims that Mr. Harris, Mr. Canepari, and Mr. Baker violated her federal constitutional rights in violation of a federal law known as Title 42 United States Code, Section 1983, and also acted contrary to state law. Specifically, Ms. Pal brings claims against these defendants under Section 1983 of excessive force in violation of the Fourth Amendment. Ms. Pal claims that Mr. Canepari and Mr. Harris used excessive force by applying handcuffs too tightly, further tightening the handcuffs in response to her complaints, and twisting her arms to cause pain while she was handcuffed. Ms. Pal alleges that Mr. Baker failed to intervene to stop the alleged use of excessive force. Ms. Pal alleges that the same conduct by these defendants constituted assault, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress, all in violation of state law. Ms. Pal further alleges that Mr. Canepari defamed her in violation of state law by falsely stating in his request for emergency evaluation at the hospital that Ms. Pal "repeatedly told officer she would 'fucking kill you.'" Ms. Pal alleges that the Town of Wilton is liable for any negligent actions in violation of state law by Mr. Canepari, Mr. Harris, and Mr. Baker.

Ms. Pal brings claims only under state law against Mr. Bryson, Mr. Kennedy, Mr. Downs, Wilton Volunteer Ambulance, and Norwalk Hospital. She claims that Mr. Downs, Mr. Bryson, and Mr. Kennedy committed assault and battery inside the ambulance by touching her breasts and upper and inner thigh areas unnecessarily. Ms. Pal alleges that this conduct also constituted intentional infliction of emotional distress and negligent infliction of emotional distress. Ms. Pal alleges that Mr. Downs defamed her by falsely stating in his report that Pal

was "arrested for assault" and that Mr. Byson defamed her by falsely stating in his report that Ms. Pal was "kicking at police." Finally, Ms. Pal alleges that Mr. Bryson, Mr. Downs, and Mr. Kennedy defamed her by falsely telling Norwark Hospital staff that Ms. Pal had "assaulted police" and "was going to be arrested." Ms. Pal alleges that Wilton Volunteer Ambulance and Norwalk Hospital are liable for any wrongful conduct by their employees.

Before I begin my instructions about the specific issues and claims in this case, a word of caution. Although there are nine defendants in this case, it does not follow that if one is liable, the others are liable as well. The claims against these defendants are separate, and each defendant is entitled to fair, separate, and individual consideration without regard to your decision as to the other defendants. Although I may refer to "defendants," you must consider each defendant individually.

I will now explain the law applicable to Ms. Pal's claims. I will discuss Ms. Pal's federal law claims first.

A. **The Claim for Deprivation of Rights Under Color of Law**

Ms. Pal has brought a Section 1983 claim against Mr. Canepari, Mr. Harris, and Mr. Baker to obtain redress for what she claims were violations of her rights under the Fourth Amendment of the United States Constitution. Defendants deny this claim.

In order to prevail on her claim under Section 1983 against Mr. Canepari, Mr. Harris, and Mr. Baker, Ms. Pal must establish three elements by a preponderance of the evidence:

First, that the defendant acted under color of state law;

Second, that the defendant deprived Ms. Pal of a right protected by the Constitution or laws of the United States; and

Third, that such deprivation proximately caused injury to Ms. Pal.

I will now examine each of the three elements in greater detail.

### 1. The First Element: Acting Under Color of State Law

To prove the first element of a Section 1983 claim, Ms. Pal must prove that Mr. Canepari, Mr. Harris, and Mr. Baker were acting under the color of legal authority, in this case, the authority of the Town of Wilton. Acting under color of law simply means that the activities at issue occurred while Mr. Canepari, Mr. Harris, and Mr. Baker were performing official duties. In this case, the parties have agreed that Mr. Canepari, Mr. Harris, and Mr. Baker were acting under color of state law. Thus, the first element of Ms. Pal's Section 1983 claim has been satisfied by agreement of the parties.

### 2. The Second Element: Deprivation of a Constitutional Right

For the second element of Ms. Pal's claim, she must establish by a preponderance of the evidence that the defendant's conduct deprived her of a right secured by the Constitution or federal law. Here, Ms. Pal alleges that Mr. Canepari and Mr. Harris violated the Fourth Amendment on May 5, 2018 by applying handcuffs too tightly, further tightening the handcuffs in response to her complaints, and twisting her arms to cause pain while she was handcuffed. Ms. Pal alleges that Mr. Baker failed to intervene to prevent this use of excessive force.

#### a. Excessive Force

The Fourth Amendment to the United States Constitution protects persons from being subjected to excessive force during the course of detention or arrest. In other words, law enforcement officials may employ only the amount of force reasonably necessary under the circumstances.

Ms. Pal alleges that Mr. Canepari and Mr. Harris violated her constitutional rights by using excessive force during her detention. The Fourth Amendment does not prohibit the use of any and all force by a police officer in detaining someone. But officers are prohibited from using more force than is reasonably necessary, in light of the circumstances facing the officer, to detain.

You must determine whether the force used by Mr. Canepari and Mr. Harris against Ms. Pal was that which a reasonable officer would have employed under similar circumstances. The test is not whether Mr. Canepari and Mr. Harris thought their use of force was reasonable. Rather, it is an objective standard: would a reasonably competent police officer consider the amount of force used by Mr. Canepari and Mr. Harris reasonable under the circumstances at the time the force was used? The reasonableness of a particular use of force must be judged from the perspective of a reasonable police officer on the scene, rather than with the benefit of 20/20 hindsight.

In making this determination, you may consider the need for the application of force; the relationship between the need for the application of force and the amount of force that was used; the extent of Ms. Pal's injuries; the nature and severity of the crime at issue; whether Ms. Pal posed an immediate threat to the safety of Mr. Canepari, Mr. Harris or others; any effort made by the officer to temper or to limit the amount of force; and whether Ms. Pal actively resisted detention or attempted to evade detention by flight. The factors I just mentioned are only meant to assist you with your deliberations. They are not exclusive; they are not the only factors that you may consider. Again, the overall question you should be asking yourselves is what amount of force a reasonable officer would have used under similar circumstances.

Ms. Pal has the burden of establishing by a preponderance of the evidence that Mr. Canepari and Mr. Harris used excessive force against her during the course of her detention.

If you find that the amount of force used by Mr. Canepari or Mr. Harris was greater than a reasonable officer would have employed, Ms. Pal has proven the excessive force aspect of this element of the claim as to that defendant. If you find that Mr. Canepari or Mr. Harris used reasonable force under the circumstances, then that defendant did not violate the Fourth Amendment by using excessive force.

**b. State of Mind Required Under Section 1983**

In order to prove the second element of a Section 1983 claim, Ms. Pal must prove that the defendant acted intentionally or recklessly; mere negligence is not enough. But she does not need to prove that the defendant acted with the specific intent to violate her federally protected rights. An act is intentional if it is done voluntarily and deliberately and not because of mistake, accident, or negligence. Intent can be proved directly or it can be proved by reasonable inference from circumstantial evidence.

An act is reckless if it is done in conscious disregard of its known probable consequences. In other words, if Mr. Canepari or Mr. Harris knew his actions were highly likely to result in excessive force towards Ms. Pal, but he acted anyways, then the state of mind requirement of the second element would be satisfied as to that defendant.

Ms. Pal need only show that Mr. Canepari and Mr. Harris intentionally or recklessly performed some action, not that they intended or were reckless as to a particular result. For example, if a plaintiff proves that a defendant applied some degree of force and did it deliberately—and that the force was objectively unreasonable— then the second element is

satisfied even if the defendant did not intend for his application of force to result in the particular injuries that the plaintiff suffered.

### 3. The Third Element: Proximate Cause

In order to prove the third element of a Section 1983 claim, Ms. Pal must prove that Mr. Canepari and Mr. Harris proximately caused her injuries. Under Section 1983, a defendant is responsible for the natural consequences of his actions. A defendant's action is a proximate cause of an injury if it was a substantial factor in bringing about that injury; if the injury was a direct result of the act; or if the injury was a reasonably probable consequence of the act.

The issue is whether a reasonable person would think that Mr. Canepari and Mr. Harris caused Ms. Pal's injuries. This does not mean that the law recognizes only one proximate cause of an injury, consisting of only one factor or thing, or the conduct of only one person. On the contrary, many factors or things, or the conduct of two or more persons, may operate at the same time either independently or together, to cause injury; and in such a case, each action may be a proximate cause of the injury.

If you find that Ms. Pal has proven by a preponderance of the evidence that Mr. Canepari's or Mr. Harris's conduct proximately caused an injury suffered by Ms. Pal, then Ms. Pal has proven the third and final element of the Section 1983 claim as to that defendant. If you find that Ms. Pal complains about an injury that was not proximately caused by Mr. Canepari or Mr. Harris, then Ms. Pal cannot prevail on her Section 1983 claim.

### 4. Failure to Intervene

All law enforcement officers have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers. The

constitutional violation must be of sufficient duration to support the conclusion that an officer who stood by without trying to assist the citizen became a tacit collaborator.

If you find that Mr. Canepari or Mr. Harris are liable regarding the above-described excessive force claim, Ms. Pal must also demonstrate, by a preponderance of the evidence, that: (1) Mr. Baker observed or had reason to know of Mr. Canepari's or Mr. Harris's constitutional violation; (2) Mr. Baker had a realistic opportunity to intervene to prevent the harm from occurring; (3) Mr. Baker failed to intervene to prevent the harm; (4) Ms. Pal suffered a constitutional violation; and (5) the constitutional violation was a result of Mr. Baker's failure to intervene.

**B. Assault and Battery**

Ms. Pal's claims of assault and battery are based on two distinct events that involve different groups of defendants. Specifically, Ms. Pal claims that Mr. Canepari, Mr. Harris, and Mr. Baker committed the civil torts of assault and battery in applying handcuffs too tightly, further tightening the handcuffs in response to her complaints, and twisting her arms to cause pain while she was handcuffed. She claims that Mr. Downs, Mr. Bryson, and Mr. Kennedy committed the civil torts of assault and battery inside of the ambulance by touching her breasts and upper and inner thigh areas unnecessarily.

An assault is an act that causes another person to be placed in imminent apprehension of a harmful or offensive contact with that person. Ms. Pal must have believed that the act would result in imminent contact unless prevented by self-defensive action or flight or the intervention of some outside force. The act must be done by the defendant intentionally, wantonly, or without the exercise of due care.

A battery is a harmful or offensive contact with the person of another. The contact must be the direct and immediate consequence of a force exerted by the defendant intentionally, wantonly, or without the exercise of due care.

In the case of both assault and battery, a harmful contact is one that causes physical impairment of the condition of another's body, physical pain, or illness. With respect to both assault and battery, an offensive contact is one that offends a reasonable sense of personal dignity.

### 1. Assault and Battery as to Wilton Police Defendants

Under Connecticut law, a police officer is justified in using physical force: "when and to the extent that he or she reasonably believes such to be necessary to: (1) Effect an arrest or prevent the escape from custody of a person whom he or she reasonably believes to have committed an offense, unless he or she knows that the arrest or custody is unauthorized; or (2) defend himself or herself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape." If an officer's actions are in accordance with the law, he is not liable in tort for assault or battery.

## C. Intentional Infliction of Emotional Distress

Ms. Pal's claims of intentional infliction of emotional distress are based on two distinct events that involve different groups of defendants. Specifically, Ms. Pal claims that Mr. Canepari, Mr. Harris, and Mr. Baker committed intentional infliction of emotional distress in the course of applying handcuffs too tightly, further tightening the handcuffs in response to her complaints, and twisting her arms to cause pain while she was handcuffed. She claims that Mr. Downs, Mr. Bryson, and Mr. Kennedy committed intentional infliction of emotional

distress inside of the ambulance in the course of touching her breasts and upper and inner thigh areas unnecessarily.

There are four elements that must be established for a finding of intentional infliction of emotional distress: (1) that the defendant intended to inflict emotional distress, or that the defendant knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the conduct caused the plaintiff to experience emotional distress; and (4) that the emotional distress sustained by the plaintiff was severe.

To prove the second element—that the conduct was extremeness and outrageous—Ms. Pal must prove that the defendant's conduct exceeded all bounds usually tolerated by decent society. You may find liability only where the defendants' conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Ms. Pal must prove facts that would arouse the resentment of an average member of the community against the actor, and lead him or her to exclaim, "Outrageous!" Conduct on the part of the defendants that is merely insulting or displays bad manners or results in hurt feelings is insufficient to prove extreme and outrageous conduct.

In order for Ms. Pal to prevail on her claim of intentional infliction of emotional distress you must find that she has proved all of the elements of intentional infliction of emotional distress.

**D. Negligent Infliction of Emotional Distress**

Ms. Pal's claims of negligent infliction of emotional distress are based on two distinct events that involve different groups of defendants. Specifically, Ms. Pal claims that Mr.

Canepari, Mr. Harris, and Mr. Baker committed negligent infliction of emotional distress in the course of applying handcuffs too tightly, further tightening the handcuffs in response to her complaints, and twisting her arms to cause pain while she was handcuffed. She claims that Mr. Downs, Mr. Bryson, and Mr. Kennedy committed negligent infliction of emotional distress inside of the ambulance in the course of touching her breasts and upper and inner thigh areas unnecessarily.

There are three elements that the plaintiff must prove for a finding of negligent infliction of emotional distress: (1) the defendant engaged in conduct that the defendant should have realized involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily injury; (2) that the conduct caused emotional distress to the plaintiff; and (3) the distress was of such a nature as might result in illness or bodily harm.

As to the first element, that is, that the defendant engaged in conduct that the defendant should have realized involved an unreasonable risk of causing emotional distress and that the distress, if it were caused, might result in illness or bodily injury, Ms. Pal need not prove that the defendant intended to cause her any harm or distress but only that the defendant should have known that it was likely that a reasonable person under the circumstances would be distressed by the conduct and that that distress might result in illness or bodily injury. As to the second and third elements, you must determine whether Ms. Pal actually experienced fear or distress, and if so, whether the fear or distress experienced by Ms. Pal was reasonable in light of the conduct of the defendant. If you find that it was reasonable for Ms. Pal to experience distress in light of the conduct of the defendant, then Ms. Pal is entitled to prevail and you can go on to consider damages. Conversely, if any distress experienced by Ms. Pal

was unreasonable in light of the defendant's conduct, then you cannot find in favor of Ms. Pal on this count and you must return a verdict for the defendant.

### E. Claim for Negligence Against the Town of Wilton

Ms. Pal has asserted a claim against the Town of Wilton under Connecticut General Statutes § 52-557n. According to this law, a town or municipality may be held liable for the negligent actions or inactions of any employee, officer or agent acting within the scope of his employment or official duties. Ms. Pal seeks to hold the Town liable for what she claims were the negligent acts of Mr. Canepari and Mr. Harris in applying handcuffs too tightly, further tightening the handcuffs in response to her complaints, and twisting her arms to cause pain while she was handcuffed. In addition, she seeks to hold the Town liable for what she claims were the negligent acts of Mr. Baker in failing to intervene with respect to the handcuffing.

Negligence is the violation of a legal duty which one person owes to another. To succeed on this claim, Ms. Pal must prove, by a preponderance of the evidence, that: (1) Mr. Canepari, Mr. Harris, and Mr. Baker owed Ms. Pal a duty of care; (2) Mr. Canepari, Mr. Harris, and Mr. Baker breached their duty to use reasonable care under the circumstances; (3) Mr. Canepari's, Mr. Harris's, and/or Mr. Baker's negligence caused harm to Ms. Pal; and (4) Ms. Pal suffered damages.

As to the first element, a duty to use care exists when a reasonable person, knowing what Mr. Canepari, Mr. Harris, and Mr. Baker here either knew or should have known at the relevant time, would foresee that harm of the same general nature as that which occurred here was likely to result from that conduct. If harm of the same general nature as that which occurred here was foreseeable, it does not matter if the manner in which the harm that actually occurred was unusual, bizarre, or unforeseeable.

As to the second element, reasonable care is the care that a reasonably prudent person would use in the same circumstances. In determining the care that a reasonably prudent person would use in the same circumstances, you should consider all of the circumstances which were known or should have been known to Mr. Canepari, Mr. Harris, and Mr. Baker at the time of the conduct in question. Whether the care is reasonable depends upon the dangers that a reasonable person would perceive in those circumstances. It is common sense that the more dangerous the circumstances, the greater the care that ought to be exercised. Ms. Pal need only prove that Mr. Canepari, Mr. Harris, and Mr. Baker failed to use reasonable care in one way.

As to the third element, Ms. Pal must prove that she was harmed in some way by Mr. Canepari's, Mr. Harris's, and Mr. Baker's negligence—meaning there is some harm that would not have occurred if Mr. Canepari, Mr. Harris, and Mr. Baker had used reasonable care. Ms. Pal is not required to prove that Mr. Canepari's, Mr. Harris's, and Mr. Baker's negligence was the only cause of the harm, or even the most significant cause. Ms. Pal does have to prove, however, that Mr. Canepari's, Mr. Harris's, and Mr. Baker's negligence was a substantial factor in producing the harm, meaning that Mr. Canepari's, Mr. Harris's, and Mr. Baker's negligence contributed materially and not just in a trivial or inconsequential manner.

As to the fourth element, Ms. Pal is not required to prove that Mr. Canepari, Mr. Harris, and Mr. Baker actually foresaw or should have foreseen the extent of the harm suffered or the manner in which it occurred.

Instead, Ms. Pal must prove that the harm she suffered was of the same general nature as that which a reasonably prudent person in Mr. Canepari's, Mr. Harris's, and Mr. Baker's position should have anticipated, in view of what Mr. Canepari's, Mr. Harris's, and Mr. Baker's knew or should have known at the time of the negligent conduct.

### F. Governmental Immunity

Mr. Canepari, Mr. Baker, and Mr. Harris were municipal employees of the Town of Wilton on May 5, 2018. If you conclude that Ms. Pal has satisfied the requirements set forth above on either (1) her negligent infliction of emotional distress claim against Mr. Baker, Mr. Harris, or Mr. Canepari or (2) her negligence claim against the Town of Wilton, you must also consider governmental immunity.

Ordinarily, a municipal employee has immunity from liability for negligence in connection with discretionary acts performed within the scope of his employment. Similarly, a municipality is immune from negligence liability resulting from the discretionary acts committed by its employees. Because the manner in which an officer detains someone is a discretionary act, the actions of Mr. Canepari, Mr. Baker, and Mr. Harris here were discretionary. However, the Town of Wilton, Mr. Canepari, Mr. Baker, and Mr. Harris are not immune if Mr. Canepari, Mr. Harris, and Mr. Baker's actions and inactions were likely to cause imminent harm to an identifiable person. I will call this the "identifiable person, imminent harm" exception.

To meet this exception, Ms. Pal must prove by a preponderance of the evidence that the three following components were satisfied at the time of her alleged injury. These components are: (1) that Ms. Pal was an identifiable victim with respect to her assertions of negligence against Mr. Harris, Mr. Canepari, and Mr. Baker; (2) that the harm which she claims occurred was imminent when Mr. Harris, Mr. Canepari, and/or Mr. Baker acted or failed to act; and (3) that it was apparent to Mr. Harris, Mr. Canepari, and/or Mr. Baker, that his/their conduct was likely to subject Ms. Pal to the particular harm alleged.

You must first determine whether Ms. Pal was an identifiable victim. Ms. Pal alleges that she was an identifiable victim at the time of each defendant's allegedly negligent conduct. If you find that Ms. Pal was an identifiable victim, you will proceed to the next component. If you do not find that Ms. Pal was an identifiable victim, you will return a verdict in favor of Mr. Canepari, Mr. Harris, Mr. Baker, and the Town of Wilton on the negligence claims described at the beginning of this section.

The second component of this exception requires you to determine whether Ms. Pal has proven that the harm to which she was subjected, if any, was "imminent." In this context, "imminent" means about to occur at any moment, close to happening, or on the verge of happening. Ms. Pal must prove what the surrounding circumstances were and that the need for Mr. Harris, Mr. Canepari, and/or Mr. Baker to act to prevent imminent harm to Ms. Pal was clear and unequivocal.

The third component that Ms. Pal must prove is that the particular, imminent danger to which she claims she was exposed, as an identifiable victim, was apparent to a reasonable person in the position of Mr. Harris, Mr. Canepari, and/or Mr. Baker. The risk needs to have been sufficiently great that it must have been apparent to either Mr. Harris, Mr. Canepari, and/or Mr. Baker, that there was a clear and unequivocal need to act promptly. "Apparent" means easily observed and understood. The circumstances surrounding the incident must have been such that it would have been apparent to either Mr. Harris, Mr. Canepari, and/or Mr. Baker, that his/their failure to act would likely place Ms. Pal in imminent danger.

You must refrain from resorting to the clarity of hindsight when evaluating the situation faced by Mr. Harris, Mr. Canepari, and Mr. Baker. Also, you must use only the information that was available to Mr. Harris, Mr. Canepari, and/or Mr. Baker when assessing whether it

was apparent that injury of the sort sustained by Ms. Pal was imminent unless Mr. Harris, Mr. Canepari, and/or Mr. Baker, acted to prevent it.

Although the components have been identified separately, they are interconnected. The criteria of identifiable person and imminent harm must be evaluated with reference to each other. An allegedly identifiable person must be identifiable as a potential victim of a specific imminent harm. Likewise, the alleged imminent harm must be imminent in terms of its impact on a specific identifiable person. For the purposes of the imminent harm exception, it is impossible to be an identifiable person in the absence of any corresponding imminent harm.

You should consider the elements of this exception separately as to Mr. Harris, Mr. Canepari, and Mr. Baker. If you find that Ms. Pal has proven all the elements of the exception as to a particular defendant, then that defendant has no immunity from Ms. Pal's negligence claims. However, if you find Ms. Pal has not proven all of the elements of this exception as to a particular defendant, then that defendant retains immunity from Ms. Pal's negligence claims. If you find Mr. Harris, Mr. Canepari, and/or Mr. Baker has no immunity, then the Town of Wilton is liable for the negligent actions of those defendants who have no immunity and you should proceed to consider the issue of damages. If Mr. Harris, Mr. Canepari, and Mr. Baker all retain immunity, then the Town of Wilton is not liable and you must return a verdict in favor of the Town of Wilton.

**G. Comparative Negligence**

In this case, the defendants have filed a special defense alleging that Ms. Pal's injuries were legally caused by her own negligence. The defendants must prove the elements of this special defense by a preponderance of the evidence. Specifically, the defendants must prove

that Ms. Pal was negligent in one or more of the ways specified in the special defense and that such negligence was a legal cause of any of Ms. Pal's injuries.

If Ms. Pal was more at fault than the defendants, then she cannot recover any damages. Here is an example to make this rule clear: If Ms. Pal were 20% at fault and defendants were 80% at fault, Ms. Pal would recover 80% of her damages. If Ms. Pal were 50% at fault and the defendant were 50% at fault, Ms. Pal would recover 50% of her damages. However, if Ms. Pal were more than 50% at fault, she was more at fault than the party she has sued, and she recovers no damages.

Just as an example, suppose Ms. Pal's total damages were $100. If Ms. Pal were 30% at fault and the defendants were 70% at fault, Ms. Pal would recover 70% of the $100, or $70. Ms. Pal would thus not receive payment for the part of her damages caused by her own negligence. Obviously, the numbers used are just for the sake of an example. I could have used $10,000 or $10 million.

**H. Good Samaritan Law**

Mr. Bryson, Mr. Kennedy, and Mr. Downs have asserted that they are immune from Ms. Pal's negligence claim under Connecticut's Good Samaritan Law. The Good Samaritan Law provides that a paid or volunteer emergency medical service personnel who renders emergency first aid to a person in need thereof, shall not be liable to the person assisted for civil damages or personal injuries resulting from acts or omissions by such person in rendering the emergency first aid arising out of ordinary negligence.

The emergency medical service personnel can only be liable for acts or omissions constituting gross, willful or wanton negligence. Gross negligence requires conduct indicating a reckless indifference to the rights of others. It means more than a momentary thoughtlessness,

inadvertence or error in judgment; instead it requires egregious conduct. Gross negligence requires an extreme departure from the ordinary standard of care, and aggravated disregard for the rights and safety of others. Wanton misconduct is reckless misconduct. It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action.

If you find that Mr. Bryson, Mr. Kennedy, and Mr. Downs acted negligently, but their negligence was ordinary negligence arising from the first aid they provided to Plaintiff, then you must find that Mr. Bryson, Mr. Kennedy, and Mr. Downs are immune from liability under the Good Samaritan Law. However, if you find that Mr. Bryson, Mr. Kennedy, and Mr. Downs acted with gross or wanton negligence, meaning their conduct was egregious, they will not be immune and you will go on to determine damages as instructed.

## I. Libel, Defamation, and Defamation Per Se

Ms. Pal alleges that Canepari, Bryson, Kennedy, and Downs are liable for false statements they published concerning her on May 5, 2018.

### 1. General Instructions

A defamatory statement is a false communication that tends to harm the reputation of another; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held; to deter third persons from associating or dealing with her; or to excite adverse, derogatory, or unpleasant feelings or opinions against her. Statements claimed to be defamatory should be given their ordinary meaning, which is the same meaning that people of common and reasonable understanding would give to them in the context and under all the circumstances that were present at the time they were made. In determining whether a statement is defamatory, you are not bound by the interpretation of the statement offered by the plaintiff,

the defendant or by any person hearing the statement. If the meaning of the statement is unclear, it is your job as the jury to determine what the meaning of the statement was.

To establish a case of defamation, Ms. Pal must prove the following: (1) the defendant published a defamatory statement to a third person; (2) the defamatory statement identified Ms. Pal to a third person; and (3) Ms. Pal's reputation suffered injury as a result of the statement.

Publication means to make a statement to another orally, in writing, or by some other means of communication. The publication of the defamatory information can be done intentionally or negligently, so long as it is done in a manner such that in the ordinary course of events it will come to be communicated to a third person.

### 2. Libel Per Quod

Libel is written defamation. It is the publication of defamatory material by either written or printed words, or by some other form of printed communication that has the same potential harmful characteristics associated with written or printed words.

In this case, Ms. Pal alleges that Canepari defamed her by stating in a form he issued under Connecticut General Statutes Section 17a-503(a) requesting an emergency evaluation at the hospital that Ms. Pal threatened to kill police officers. Ms. Pal also alleges that Downs defamed her by stating in his report for Norwalk Hospital providers that she was arrested for assault. Ms. Pal alleges that Bryson stated in his report for Wilton Volunteer Ambulance that she was yelling and kicking at police while in the police cruiser.

In order to prove these claims of libel per quod, the plaintiff must prove the following: (1) that the defendant published a writing to a third party; (2) that the writing identified Ms. Pal, such that it would be reasonably understood that it was about her; (3) that the writing was

defamatory to Ms. Pal; and (4) that the publication caused harm to Ms. Pal. Only if you find that Ms. Pal has proven each of these elements, by a preponderance of the evidence, can you find that she has established a case of libel.

**3. Libel Per Se**

Certain written defamatory statements are considered to be so harmful in and of themselves that the person to whom they relate is entitled to recover general damages for injury to reputation, without proving that any special or actual damages were caused by the statements. These defamatory statements are called libel per se. Libel per se is a type of libel in which the defamatory meaning is apparent on the face of the statement.

When the defamatory words are libel per se, the law conclusively presumes that there is injury to the plaintiff's reputation. Ms. Pal is not required to prove that her reputation was damaged. Ms. Pal is entitled to recover, as general damages, for the injury to her reputation and for the humiliation and mental suffering caused by the libel.

If you find that Ms. Pal has proven each of the elements of libel, as I have previously instructed you, then this conduct would be libel per se because these statements assert Ms. Pal committed a crime that is punishable by imprisonment.

**4. Slander Per Se**

Ms. Pal also seeks to recover damages for slander. Slander is oral defamation of character. Slander is the speaking of defamatory words which injure the reputation of the person defamed or which deter people from associating with or dealing with the person defamed. In most cases, plaintiffs must prove actual injury to their reputations in order to recover in an action for slander. Actual injury must be proven unless the slander occurred in one of the categories called slander per se. If a statement is slanderous per se, Ms. Pal is entitled

to recover for general damages to her reputation without having to prove that actual damage was caused by the statements. This is because the law conclusively presumes that these statements cause injury to a person's reputation.

In this case, Ms. Pal contends that Bryson, Downs, and Kennedy each falsely told medical providers and non-medical persons present in the emergency room at Norwalk Hospital that she had assaulted the police and was going to be arrested.

If you find that Ms. Pal has proven, by a preponderance of the evidence, that the defendants made the statement to a third person, which identified Ms. Pal, such that it would be reasonably understood that it was about Ms. Pal, then this would be slander per se because it asserts Ms. Pal committed a crime that is punishable by imprisonment.

**5. Damages for Libel Per Quod**

In an action for libel per quod, the law does not presume that the plaintiff sustained injury to her reputation. As I have previously instructed you, to recover in an action of libel per quod, Ms. Pal must prove to you that she incurred what is called actual damages, also called special damages, that is an actual injury or loss. The loss must be caused by the publication of the defamatory statement. The special damages must be of a material nature and, generally, must be of a pecuniary nature, that is dealing with money.

**6. Privilege**

As I have instructed you, the burden is on Ms. Pal to prove that the defendant made the defamatory statement about her. Even if Ms. Pal does prove that the statement was made, Mr. Canepari claims that he is not liable because he had a right to report in his emergency evaluation request that Ms. Pal threated to kill police officers.. Under certain conditions, a

person will not be liable for making a defamatory statement if that person had a right, or privilege, to make the statement.

In this case, the privilege that Mr. Canepari states he was exercising is that the statement in was made in good faith in the discharge of a public duty, specifically his position as a police officer. Mr. Canepari has the burden to prove that the statement was made under circumstances that were substantially as he claimed them to be. If you find that Mr. Canepari has proven this to you, then as a matter of law, his statements were privileged. If you find that Mr. Canepari has not proven this to you, then the statements were not privileged.

If you do find that Mr. Canepari's statements were privileged, you must determine whether Mr. Canepari has misused his privilege. If you find that Mr. Canepari has acted maliciously and has not acted honestly or in good faith, he loses the privilege. Malice can include ill will or a desire to hurt another person, but it does not always have to include similar negative feelings. Malice can include any improper or unjustifiable motive. It can also include making a statement with knowledge that it is false or with reckless disregard of whether it is false or not. A negligent misstatement of fact is not enough to lose the privilege.

If you find that Mr. Canepari did not make the statement in good faith and for the reason that he claims, but that he made it maliciously for an improper reason, then the statement was not privileged. You should consider all of the circumstances surrounding the making of the statement in making your determination of whether the statement was privileged and, if privileged, whether it was made in good faith or with malice.

Mr. Canepari has the burden to prove, by a preponderance of the evidence, that the statement was privileged. If privileged, then Ms. Pal has the burden to prove, also by a

preponderance of the evidence, that the privilege was misused because the statement was made maliciously.

**J. Vicarious Liability**

In this case, the plaintiff alleges that Wilton Volunteer Ambulance Corp. is vicariously liable for the actions of Bryson and Kennedy, and that Norwalk Hospital is vicariously liable for the actions of Downs.

An employer is vicariously liable for compensatory damages arising out of the tortious conduct of its employees when that conduct occurs during the course of the employee's employment. To prove that an employee was acting within the scope of employment, Ms. Pal must establish that the employee's conduct (1) occurred primarily within the employer's authorized time and space limits; (2) was of the type that the employee is employed to perform; and (3) was motivated, at least in part, by a purpose to serve the employer.

If Ms. Pal has proven that Mr. Bryson, Mr. Kennedy, or Mr. Downs committed tortious conduct, and that tortious conduct was committed while they were acting within the scope of their employment, then you will find their employer vicariously liable for the compensatory damages arising from their tortious conduct.

## PART III: DAMAGES

It is exclusively your function to decide upon liability. I am instructing on the law of damages so that, if you decide that Ms. Pal is entitled to recover against any of the defendants, you will have guidance as to how you should proceed to determine damages.

### A. General Instructions on Damages

If you find that any defendant is liable to Ms. Pal on any of her claims, then you must determine the amount of money to award to Ms. Pal as damages.

Before I instruct you on the issue of damages, a few words of caution are in order. If Ms. Pal fails to prove the elements of her claims against a particular defendant, then that defendant has prevailed on the issue of liability and you should not consider the issue of damages as to that defendant. Only if Ms. Pal has proven, by a preponderance of the evidence, that any of the defendants are liable should you address the issue of damages.

The fact that I am instructing you on the subject of damages does not mean that I have an opinion one way or the other on whether you should or should not reach the issue of damages in your deliberations. Again, you are to reach the issue of damages only if you find by a preponderance of the credible evidence that the plaintiff has established one or more of her claims.

With respect to the damages claimed, as with every matter before you, you can award only such damages as are justified by the proof and the law. The burden is on Ms. Pal to satisfy you by a preponderance of the evidence as to the extent and nature of the losses she suffered as a result of the acts of the defendants. It is not the defendants' burden to disprove the claimed losses.

Our law permits Ms. Pal and the defendants' lawyers to argue to the jury their view of the proper amount of damages. You should understand that what they may say about the amount of damages is not evidence, but only argument. The determination of the amount to be awarded, if any, is solely your function and in your deliberations you may accept or disregard their arguments on the amount of damages.

You must be careful to impose any damages that you may award on a claim solely on the defendant who you find to be liable on that claim and who you find caused the damages. There are multiple defendants in this case, and it bears repeating that each is entitled to fair, separate, and individual consideration. If you find only one defendant is responsible for a particular injury, then you must impose damages for that injury only upon that defendant.

I will now explain the different types of damages that may apply.

**B. Compensatory Damages**

Ms. Pal seeks compensatory damages, the purpose of which is to award, as far as possible, fair and just compensation. If you decide in favor of Ms. Pal on the issue of liability, you must then fix the amount of damages that will reasonably and fairly compensate her for any harm caused by the defendants. Compensatory damages seek to make the plaintiff whole—that is, to compensate for the losses or injuries suffered. The rule is that the plaintiff should be awarded fair and just compensation for proven losses or injuries. compensatory damages are not awarded to punish a defendant for his or her unlawful actions.

You shall award damages only for those injuries that you find Ms. Pal has proven by a preponderance of the evidence. Moreover, you may not simply award damages for any injury suffered by Ms. Pal—you must award damages only for those injuries that are a proximate result of the defendant's conduct. An act is a proximate cause of an injury if it was a substantial factor in bringing about that injury.

In this case, there are two general types of compensatory damages with which you must be concerned: economic and noneconomic damages. Economic damages are monies awarded as compensation for monetary losses and expenses that the plaintiff has incurred as a result of a defendant's conduct. They are awarded for such things as lost income and damage to property

belonging to the plaintiff. Non-economic damages provide compensation for all non-financial losses including physical injury and pain, mental pain, emotional pain and suffering, humiliation, injury to reputation, embarrassment, fear, anxiety, or anguish. Non-economic damages may include past harm, future harm, or a permanent reduction in Ms. Pal's ability to pursue and enjoy the activities of life.

You may not award compensatory damages based on speculation or sympathy. Damages must be based on the evidence at trial. On the other hand, the law does not require a plaintiff to prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. You should award damages to the extent that the loss or injury can be reasonably quantifiable and not simply on the basis of the inherent value of the rights violated. The damages you award should be proportional to the actual loss sustained, whether that loss is physical, mental, or emotional, or one of the other types of loss I have mentioned.

In awarding compensatory damages, Ms. Pal is entitled to full compensation for all injuries and losses that were proximately caused by a defendant, even if those injuries and losses are more serious than they otherwise would have been because of a pre-existing condition. You may not compensate for the pre-existing injury itself. But if a defendant's actions proximately caused the aggravation of such an injury, then the aggravation is a proper item of non-economic damages.

If you find that Ms. Pal had a pre-existing condition, and that a defendant aggravated that pre-existing condition, you should determine, if you can, what portion of Ms. Pal's injury resulted from the aggravation.

**C. Nominal Damages**

With respect to Ms. Pal's Section 1983 claims only, if you find that any defendant violated Ms. Pal's constitutional rights, but you do not find that she suffered actual injury or loss as a result, then Ms. Pal is entitled to "nominal damages" for that loss. Nominal damages may be set in the amount of $10.00.

The mere fact that a constitutional deprivation has occurred is an injury even when no actual damages flow from that deprivation. Therefore, if you find that Ms. Pal has suffered no damages on her Section 1983 claims as a result of the conduct of the defendants, other than the fact of a constitutional deprivation, then you must award nominal damages.

**D. Punitive Damages**

In addition to compensatory damages, you may, but are not required to, assess punitive damages against one or more of the defendants if you find in favor of Ms. Pal. An award of punitive damages is discretionary; that is, if you find that the legal standards for punitive damages are satisfied, then you may decide either to award punitive damages or not to award them. You may not impose punitive damages on the Town of Wilton because it is a municipality. The purpose of an award of punitive damages for a violation of section 1983 is both to punish a wrongdoer for misconduct and to warn others against engaging in this type of conduct. Punitive damages, when appropriate, are intended to protect the community and to be an expression of the jury's indignation at the misconduct.

You may only award punitive damages against a defendant officer under section 1983, however, if Ms. Pal proves by a preponderance of the evidence that the acts of the defendant officer you are considering were done with malice or reckless indifference to the violation of Ms. Pal's rights.

An act is done with "malice" if it is prompted by or accompanied by an ill will, spite, or other improper motive. An act is "reckless" when it is done in such a manner and under such circumstances as to prove an utter disregard for the rights of others.

Ms. Pal will have proven that a defendant officer acted with malice or reckless indifference if she proves that that defendant officer knew that his actions violated Ms. Pal's constitutional rights, or that the defendant officer acted with reckless disregard for whether his actions were in violation of Ms. Pal's constitutional rights. If you find that a defendant officer acted with malice or reckless disregard then you may, but are not required to, award Ms. Pal an additional amount as punitive damages if you find it appropriate to punish the defendant officer or to deter the defendant officer and others from violating section 1983 in the future.

You may also award punitive damages as to Ms. Pal's claims under state law. Under state law, punitive damages may be awarded for conduct that demonstrates a reckless indifference to the rights of others or an intentional and wanton violation of those rights. If Ms. Pal establishes that any defendant was recklessly indifferent to her rights, then Ms. Pal need not prove that that defendant actually intended to do harm to her.

If you find that Ms. Pal has met her burden to prove that the defendant's conduct demonstrates a reckless indifference to the rights of others or an intentional and wanton violation of those rights, then you may award punitive damages. The law does not require you to award punitive damages. It is, instead, a matter for your discretion.

Punitive damages under state law are limited to the costs of litigation, including attorney's fees, less taxable costs. The plaintiff bears the burden of proving what those fees and taxable costs are. The amount you choose to award is up to you, provided the plaintiff

proves those amounts, and provided you limit the award to the costs of litigation, including attorney's fees, less taxable costs.

If you award punitive damages against any defendant, you should indicate on the Verdict Form the amount of punitive damages to be awarded, bearing in mind that the law requires that punitive damages, if awarded, must be fixed with calm discretion and sound reason. The amount must not reflect bias, prejudice, or sympathy toward any party, but is to be an amount you believe necessary to fulfill the purposes of punitive damages, as I have described them. You may award punitive damages against any defendant you have found liable to Ms. Pal, and the amount of punitive damages you award may be, but does not have to be, the same for each defendant.

### E. Rule Against Double Recovery

[TO BE ADDED]

[PARTIES PRESENT CLOSING ARGUMENTS]

## PART IV: FINAL INSTRUCTIONS

You have now heard my instructions on the law and the parties' closing arguments. I remind you that the parties' arguments are not evidence. I will now give you some final instructions before you begin your deliberations.

### A. Note Taking

You were permitted to take notes during the course of the trial. Any notes you have taken should be used only as memory aids; do not give your notes more importance than your independent recollection of the evidence. If you did not take notes, you should rely on your own memory of the proceedings and should not be unduly influenced by the notes of other jurors. Your notes are not evidence and should not be shared.

**B. Unanimous Verdict**

Your verdict must be unanimous and represent the considered judgment of each juror. Each of you must make your own decision, but you must consider impartially all of the evidence and the views of your fellow jurors. It is your duty to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so consistent with the individual judgment of each juror. Until the verdict is agreed to by each juror, it is not a unanimous verdict.

In the course of your discussion, do not hesitate to re-examine your own individual views, or to change your opinions, if the deliberations and the views of your fellow jurors convince you to do so. However, you should not surrender your honest convictions about the facts or about the weight or effect of the evidence solely because of the opinion of your fellow jurors or merely to bring an end to deliberations.

Remember at all times that you are not a partisan. Rather, you are the judges of the facts and your sole interest is to seek the truth from the evidence in this case.

**C. Cell Phones And Personal Devices**

Before you begin your deliberations, you will be required to give your cellphones, tablets, and any other forms of electronic communication to the Courtroom Deputy. The Courtroom Deputy will ensure that these items are stored in a safe place and will return them to you after you finish your deliberations for the day.

**D. Foreperson**

When you return to the jury room, you should first elect one person to act as your foreperson. The foreperson does not have any more power or authority than any other juror, and his or her opinion does not count for any more than any other juror's vote or opinion. The

foreperson merely presides over your deliberations and is your spokesperson to the Court. He or she will send out any notes, and when the jury has reached its verdict, he or she will notify the marshal that the jury has reached its verdict and you will come out into open court and give the verdict.

After you have retired to begin your deliberations, you are not to leave your jury room without first notifying the marshal, who will escort you. No deliberations may take place without all jurors being present. If at any time a juror is in the bathroom facilities, the other jurors must cease deliberations and not resume deliberations until all jurors are present.

Finally, you are prohibited from conducting any outside research on the case.

**E. Verdict Form**

A Verdict Form has been prepared for your convenience. Focusing on the questions set forth in the Verdict Form will assist you in your deliberations. I want to caution you now to take your time when completing the Verdict Form. Let me ask you to look at the Verdict Form now, and I will walk through it briefly with you. As you can see, the Form consists of a series of questions. Each question calls on you either to check "yes" or "no" or to write in a monetary amount. Answer each question as it appears and only those questions shown on the Form. As you review the Form, you will see that there are instructions in bold-faced italicized type. Please read these instructions and follow them carefully. Depending on your answer to a particular question, it may not be necessary to answer a later question. Finally, be consistent in your responses.

You must complete and return the Verdict Form in court when you have reached a unanimous agreement as to your verdict. You will have the original Verdict Form in the deliberation room, and I will ask the Courtroom Deputy to collect the copies at this time. You

will be asked to answer the questions in the order in which they appear on the form, and each answer must be unanimous. When you have reached unanimous agreement as to your verdict, you will have your foreperson fill in your answers, date and sign the Verdict Form. If the foreperson makes any error in completing the Verdict Form, please do not strike out the error and add a correct response. Instead, please request a new Verdict Form, so that the Verdict Form that is submitted is error-free. Then inform the court marshal or clerk that you have reached your verdict. The Verdict Form must be used only in connection with the charge I have just given to you. The terms used in the Verdict Form are discussed in my instructions, and these instructions must govern your deliberations.

**F. Final Instructions**

Shortly after you go into the jury room, the Courtroom Deputy will bring you the exhibits in this case. Do not begin your deliberations until she has brought you the exhibits. Do not even elect a foreperson until she has brought you the exhibits, as it is very important that your deliberations remain entirely private and without interruption.

When you go into the jury room to begin your deliberations, you will be able to review the exhibits, but you will not have a transcript of the testimony. If you want any of the testimony read to you, that can be done and will occur in open court. I encourage you to limit the recitation of testimony. It is not easy to locate specific portions of the testimony, and reading the testimony is a time-consuming process, so please be as specific as possible if and when you decide to request a reading of testimony.

Your requests for a read-back of testimony and, in fact, any communication with the Court, must be made to me in writing, signed by your foreperson, and given to the marshal or

clerk. I will respond to your request as promptly as possible either in writing or by having you return to the courtroom so that I can address you orally.

I also must caution you that in your communications with the Court you should never reveal your numerical division at any time. If you are divided, do not report how the vote stands, and if you have reached your verdict, do not report what it is until you are asked in open court.

It is proper to add a final caution. Nothing that I have said in these instructions—and nothing that I have said or done during the trial—has been said or done to suggest to you what I think your verdict should be. What the verdict shall be is your exclusive duty and responsibility.

Members of the jury, that concludes my instructions to you. Thank you for your patience and attention. Members of the jury, you may now retire. The marshal will escort you to the jury room where you will begin your deliberations.